No. 26-10536

# In the United States Court of Appeals for the Fifth Circuit

Ellen Mae Fisher,

Plaintiff-Appellant

v.

Texas Tech University Regents; Dean Jack Wade Nowlin, Dean and W. Frank Newton Professor of Law at the School of Law; Jared Gonzales, In his individual and official capacity as Dean of the Texas Tech School of Law; Larry Spain, Alvin R. Allison Professor of Law and Director of the Clinical Programs and Civil Practice Clinic at the School of Law; Amy Hardberger, George W. McCleskey Professor of Water Law and Director of the Center for Water Law and Policy at the School of Law; Allison Outenreath, Associate Dean for Faculty Development, and the Erwin and Elaine Davenport Endowed Professor of Law at the School of Law; Ally Owens, Student member of the School of Law Honor Council; Terri Morgeson, In their individual and official capacities as Faculty and/or Officers of the Texas Tech School of Law Honor Council; Cody Campbell, Chairman of the Regents; Dustin Womble, Vice Chairman of the Regents; Arcilia Acosta, Member of the Regents; Pat Gordon, Member of the Regents; Clay C. Cash, Member of the Regents; Tim Culp, Member of the Regents; Shelly Sweatt, Member of the Regents; Doug McReaken, Member of the Regents; Donald Sinclair, Member of the Regents; Eli Heath, Member of the Regents; William Keffer; Texas Tech University System Board of Regents,

Defendants-Appellees

On Appeal from the United States District Court
for the Northern District of Texas, Lubbock Division

Case No. 5:26-CV-73-X

# BRIEF FOR APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General

DANIEL MOSHE ORTNER
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

*Counsel for Defendants-Appellees*

# Certificate of Interested Persons

No. 26-10536

Ellen Mae Fisher,

Plaintiff-Appellant

v.

Texas Tech University Regents; Dean Jack Wade Nowlin, Dean and W. Frank Newton Professor of Law at the School of Law; Jared Gonzales, In his individual and official capacity as Dean of the Texas Tech School of Law; Larry Spain, Alvin R. Allison Professor of Law and Director of the Clinical Programs and Civil Practice Clinic at the School of Law; Amy Hardberger, George W. McCleskey Professor of Water Law and Director of the Center for Water Law and Policy at the School of Law; Allison Outenreath, Associate Dean for Faculty Development, and the Erwin and Elaine Davenport Endowed Professor of Law at the School of Law; Ally Owens, Student member of the School of Law Honor Council; Terri Morgeson, In their individual and official capacities as Faculty and/or Officers of the Texas Tech School of Law Honor Council; Cody Campbell, Chairman of the Regents; Dustin Womble, Vice Chairman of the Regents; Arcilia Acosta, Member of the Regents; Pat Gordon, Member of the Regents; Clay C. Cash, Member of the Regents; Tim Culp, Member of the Regents; Shelly Sweatt, Member of the Regents; Doug McReaken, Member of the Regents; Donald Sinclair, Member of the Regents; Eli Heath, Member of the Regents; William Keffer; Texas Tech University System Board of Regents,

Defendants-Appellees

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellees as governmental parties, need not furnish a certificate of interested persons.

/s/ Daniel Moshe Ortner
DANIEL MOSHE ORTNER
*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons .......... i
Table of Authorities .......... v
Statement Regarding Oral Argument .......... 1
Statement of Jurisdiction .......... 2
Issues Presented .......... 3
Introduction .......... 4
Statement of the Case .......... 6
Summary of the Argument .......... 9
Standard of Review .......... 11
Argument .......... 12
- I. Fisher Lacks Standing. .......... 12
  - A. Fisher has not shown a credible threat of injury .......... 12
  - B. Fisher has not established traceability or redressability. .......... 14
- II. Sovereign Immunity Bars the Relief that Fisher Seeks. .......... 16
  - A. Fisher has sued improper Defendants. .......... 16
  - B. Fisher seeks improper relief under *Ex parte Young*. .......... 18
    - 1. The relief Fisher seeks is not prospective. .......... 20
    - 2. Even if the relief were prospective, it is not directed at any ongoing violation of federal law. .......... 24
    - 3. Fisher's demand that the Defendants retract Dean Nowlin's letter from the Board is independently barred because it would compel affirmative, discretionary state action. .......... 26
- III. Fisher is Unlikely to Succeed on the Merits. .......... 27
  - A. The Honor Council's factual findings amply support its conclusion that Fisher's actions were disruptive, and they are entitled to deference. .......... 28
  - B. Fisher's claim is subject to *Pickering* balancing, and she is unlikely to prevail under that standard. .......... 31

1. Texas Tech restricted Fisher's disruptive conduct, not her speech. ........ 33
2. Defendants were entitled to reprimand Fisher for her disruptive conduct. ........ 36

C. Fisher is also unlikely to prevail under the ordinary retaliation standard. ........ 38

D. Fisher's claim also falters when examining tiers of scrutiny and forum analysis ........ 42

1. The law school clinic was a limited or nonpublic forum. ........ 42
2. Texas Tech did not engage in viewpoint discrimination. ........ 44
3. Texas Tech's actions were reasonable in light of the academic purpose of the law clinic. ........ 46
4. Fisher is not likely to prevail even if heightened scrutiny applies. ........ 46

IV. Fisher is Not Likely to Suffer Irreparable Harm. ........ 49

V. The Balance of Equities Does Not Favor a Preliminary Injunction. ........ 51

Conclusion and Prayer ........ 53

Certificate of Compliance ........ 54

# Table of Authorities

Page(s)

**Cases:**

*Al-Dabagh v. Case W. Rsrv. Univ.*,
777 F.3d 355 (6th Cir. 2015) .......... 40
*Andersen v. McCotter*,
100 F.3d 723 (10th Cir. 1996) .......... 31
*Anibowei v. Morgan*,
70 F.4th 898 (5th Cir. 2023) .......... 52
*Application of Griffiths*,
413 U.S. 717 (1973) .......... 48
*Axson-Flynn v. Johnson*,
356 F.3d 1277 (10th Cir. 2004) .......... 41
*Batyukova v. Doege*,
994 F.3d 717 (5th Cir. 2021) .......... 27, 33
*Beattie v. Madison Cnty. Sch. Dist.*,
254 F.3d 595 (5th Cir. 2001) .......... 33, 34
*Big Tyme Invs., L.L.C. v. Edwards*,
985 F.3d 456 (5th Cir. 2021) .......... 49-50
*BNSF Ry. Co. v. Fed. R.R. Admin.*,
105 F.4th 691 (5th Cir. 2024) .......... 21
*Board of Ed. of Westside Cmty. Schs. (Dist.66) v. Mergens*,
496 U.S. 226 (1990) .......... 39
*Brawner v. Richardson*,
855 F.2d 187 (5th Cir. 1988) .......... 36
*Brinsdon v. McAllen Indep. Sch. Dist.*,
863 F.3d 338 (5th Cir. 2017) .......... 40
*Brown v. Li*,
308 F.3d 939 (9th Cir. 2002) .......... 41
*Buchanan v. Alexander*,
919 F.3d 847 (5th Cir. 2019) .......... 32, 41
*Burch v. Barker*,
861 F.2d 1149 (9th Cir. 1988) .......... 22
*Burnett Specialists v. Cowen*,
140 F.4th 686 (5th Cir. 2025) .......... 14

*California v. Texas*,
593 U.S. 659 (2021) .......... 14
*Charles v. Grief*,
522 F.3d 508 (5th Cir. 2008) .......... 33
*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .......... 34, 35
*Chiu v. Plano Indep. Sch. Dist.*,
260 F.3d 330 (5th Cir. 2001) (per curiam) .......... 43
*Christian Legal Soc'y v. Martinez*,
561 U.S. 661 (2010) (CLS) .......... 29, 39, 40, 41
*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 12, 13, 51
*Clark Cnty. Sch. Dist. v. Breeden*,
532 U.S. 268 (2001) (per curiam) .......... 34
*Cohen v. California*,
403 U.S. 15 (1971) .......... 35, 36
*Computer & Commc'ns Indus. Ass'n v. Paxton*,
No. 24-50721, 2026 WL 2130729 (5th Cir. July 24, 2026) .......... 13
*Cook v. Stephen F. Austin Univ.*,
No. 9:19-CV-201-RC-ZJH, 2020 WL 6553963 (E.D. Tex. Oct. 21, 2020) .......... 23
*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) .......... 43, 44
*Daniels v. Tex. Dep't of Transp.*,
No. 4:15-CV-00702-CAN, 2016 WL 7034518 (E.D. Tex. Dec. 2, 2016) .......... 23
*Davis v. Angelina Coll. Bd. of Trs.*,
No. 9:17-CV-179, 2018 WL 1755392 (E.D. Tex. Apr. 11, 2018) .......... 52
*Deep South Center for Environmental Justice v. EPA*,
138 F.4th 310 (5th Cir. 2025) .......... 13
*Direct Biologics, L.L.C. v. McQueen*,
63 F.4th 1015 (5th Cir. 2023) .......... 11
*Doe v. Cummins*,
662 F. App'x 437 (6th Cir. 2016) .......... 26
*Doe v. Lawrence Livermore Nat'l Lab.*,
131 F.3d 836 (9th Cir. 1997) .......... 23

*Doe v. Purdue Univ.*,
928 F.3d 652 (7th Cir. 2019) .......................................................26
*Dombrowski v. Pfister*,
380 U.S. 479 (1965).......................................................50
*Elliott v. Hinds*,
786 F.2d 298 (7th Cir. 1986) .......................................................22
*Esfeller v. O'Keefe*,
391 F. App'x 337 (5th Cir. 2010) (per curiam)....................................... 42, 52
*Fairchild v. Liberty Indep. Sch. Dist.*,
597 F.3d 747 (5th Cir. 2010).......................................................45
*Ferguson v. Thomas*,
430 F.2d 852 (5th Cir. 1970) .......................................................29
*Flint v. Dennison*,
488 F.3d 816 (9th Cir. 2007) .......................................................26
*Freedom From Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020).......................................................42
*Glass v. Paxton*,
900 F.3d 233 (5th Cir. 2018) ....................................................... 13
*Goldfarb v. Virginia State Bar*,
421 U.S. 773 (1975) .......................................................48
*Good News Club v. Milford Cent. Sch.*,
533 U.S. 98 (2001) .......................................................42
*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) .......................................................50
*Green Valley Special Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020) (en banc) .......................................8, 19, 20, 23
*Harris v. Victoria Indep. Sch. Dist.*,
168 F.3d 216 (5th Cir. 1999) ....................................................... 32, 38
*Hays Cnty. Guardian v. Supple*,
969 F.2d 111 (5th Cir. 1992) .......................................................47
*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988)....................................................... 40, 47
*Healy v. James*,
408 U.S. 169 (1972)....................................................... 41
*Hennessy v. City of Melrose*,
194 F.3d 237 (1st Cir. 1999)....................................................... 31

*Hobbs v. Hawkins*,
968 F.2d 471 (5th Cir. 1992)....................................................................44
*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989) ......................................................................50
*Hosty v. Carter*,
412 F.3d 731 (7th Cir. 2005) (en banc) ......................................................40
*Humana, Inc. v. Jacobson*,
804 F.2d 1390 (5th Cir. 1986)...................................................................52
*Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019) ....................................................................14
*Jackson v. Wright*,
82 F.4th 362 (5th Cir. 2023).............................................................16, 17, 18, 24
*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025)..............................................................22, 23
*Justin Indus. v. Choctaw Sec., L.P.*,
920 F.2d 262 (5th Cir. 1990) (per curiam) ...............................................52
*Keefe v. Adams*,
840 F.3d 523 (8th Cir. 2016) ...................................................... 40, 41, 47
*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002)....................................................................38
*Keeton v. Anderson-Wiley*,
664 F.3d 865 (11th Cir. 2011) ............................................................40, 42
*Keyishian v. Bd. of Regents*,
385 U.S. 589 (1967)...............................................................................45
*Kirkland v. Northside Indep. Sch. Dist.*,
890 F.2d 794 (5th Cir. 1989) ....................................................................38
*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949)................................................................................26
*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999).............................................................................28,29
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................12, 14
*Tex. State LULAC v. Elfant*,
52 F.4th 248 (5th Cir. 2022) .....................................................................14
*Mahmoud v. Taylor*,
606 U.S. 522 (2025)...........................................................................46, 50

*Malkan v. Mutua*,
No. 12-CV-236-A, 2012 WL 4722688 (W.D.N.Y. Oct. 3, 2012)........................22
*Marinello v. Bushby*,
163 F.3d 1356, 1998 WL 857879 (5th Cir. 1998)...............................................39
*Martinez v. Mathews*,
544 F.2d 1233 (5th Cir. 1976) .............................................................................52
*Matos ex rel. Matos v. Clinton Sch. Dist.*,
367 F.3d 68 (1st Cir. 2004).................................................................................. 51
*A.M. ex rel. McAllum v. Cash*,
585 F.3d 214 (5th Cir. 2009) ...............................................................................42
*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) .............................................................16, 18, 24
*Morgan v. Board of Professional Responsibility of the Supreme Court of Tennessee*,
63 F.4th 510 (6th Cir. 2023) ................................................................................26
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977).............................................................................................. 33
*Murthy v. Missouri*,
603 U.S. 43 (2024)................................................................................................ 12
*Nat'l Treasury Emps. Union v. United States*,
927 F.2d 1253 (D.C. Cir. 1991)............................................................................50
*Nieves v. Bartlett*,
587 U.S. 391 (2019) ..............................................................................................27
*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................. 51
*Oyama v. Univ. of Haw.*,
813 F.3d 850 (9th Cir. 2015).......................................................................39, 40
*Papasan v. Allain*,
478 U.S. 265 (1986)...............................................................................................20
*Papish v. Bd. of Curators*,
410 U.S. 667 (1973) (per curiam).........................................................................22
*Patel v. Texas Tech Univ.*,
941 F.3d 743 (5th Cir. 2019) ................................................................................28
*Pham v. Blaylock*,
712 F. App'x 360 (5th Cir. 2017) (per curiam) ...................................................52

*Pham v. Univ. of La.*,
194 F. Supp. 3d 534 (W.D. La. 2016)....................52
*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023)....................22
*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968)....................*passim*
*Plummer v. Univ. of Houston*,
860 F.3d 767 (5th Cir. 2017)....................28, 30
*Rankin v. McPherson*,
483 U.S. 378 (1987)....................37
*Regents of Univ. of Mich. v. Ewing*,
474 U.S. 214 (1985)....................39, 47, 52
*Reule v. Jackson*,
114 F.4th 360 (5th Cir. 2024)....................14, 18, 25
*Richardson v. Tex. Sec'y of State*,
978 F.3d 220 (5th Cir. 2020)....................21, 26
*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006)....................35
*Sampson v. Murray*,
415 U.S. 61 (1974)....................51
*Scott v. Flowers*
*910 F.2d 201 (5th Cir. 1990)*....................21
*Shah v. University of Texas Southwestern Medical School*,
129 F. Supp. 3d 480 (N.D. Tex. 2015)....................25, 26
*Shamloo v. Miss. State Bd. of Trs. of Insts. of Higher Learning*,
620 F.2d 516 (5th Cir. 1980)....................42
*Shepard v. Irving*,
77 F. App'x 615 (4th Cir. 2003)....................26
*Snyder v. Phelps*,
562 U.S. 443 (2011)....................45
*Stokes v. Boyce*,
No. 3:25-CV-307-GHD-RP, 2026 WL 689951 (N.D. Miss. Mar. 11, 2026)....................50
*Sullivan v. Houston Indep. Sch. Dist.*,
475 F.2d 1071 (5th Cir. 1973)....................49

*T.W. v. N.Y. State Bd. of L. Exam'rs*,
110 F.4th 71 (2d Cir. 2024) .................................................... 19, 24, 26
*Texas v. Johnson*,
491 U.S. 397 (1989) .................................................... 45
*Texas v. Lesage*,
528 U.S. 18 (1999) (per curiam) .................................................... 33
*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969) .................................................... 36, 42, 46
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................... 12
*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023) .................................................... 20
*Vapor Tech. Ass'n v. Graham*,
167 F.4th 302 (5th Cir. 2026) .................................................... 11, 12, 16
*Wang v. Paxton*,
161 F.4th 357 (5th Cir. 2025) .................................................... 12
*Ward v. Polite*,
667 F.3d 727 (6th Cir. 2012) .................................................... 40
*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .................................................... 47, 48
*Waters v. Churchill*,
511 U.S. 661 (1994) .................................................... 36
*Watts v. Fla. Int'l Univ.*,
495 F.3d 1289 (11th Cir. 2007) .................................................... 32
*Wheeler v. Miller*,
168 F.3d 241 (5th Cir. 1999) (per curiam) .................................................... 28, 38, 39, 47
*Wilkins v. United States*,
598 U.S. 152 (2023) .................................................... 21
*Williams v. Kentucky*,
24 F.3d 1526 (6th Cir. 1994) .................................................... 22
*Williams v. Reeves*,
954 F.3d 729 (5th Cir. 2020) .................................................... 19
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .................................................... 11, 51
*Ex parte Young*,
209 U.S. 123 (1908) .................................................... *passim*

*Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*,
836 F. App'x 203 (5th Cir. 2020) (per curiam) ....22
*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018).... 12-13

**Constitutional Provisions, Statutes and Rules:**

U.S. Const.:
amend. I....*passim*
Tex. Gov. Code:
§ 82.021.... 13
§ 82.028(c)(1).... 15

**Other Authorities:**

Charlie Kirk Comments, CBS AUSTIN (Apr. 13, 2026),
https://cbsaustin.com/news/local/texas-tech-law-student-sues-to-block-discipline-related-to-charlie-kirk-comments.... 15
*Criminal Defense Clinic*, TEXAS TECH UNIVERSITY SCHOOL OF LAW, https://www.depts.ttu.edu/law/clinics-and-externships/clinics/crim/index.php ....32
Tex. Disciplinary Rules Prof'l Conduct R. 8.01 ....49
Texas Tech Regents Rule 05.05, https://www.texastech.edu/board-of-regents/regents-rules/chapter-05-student-affairs.pdf....18, 19
Texas Tech Honor Code § 2.H....6

## Statement Regarding Oral Argument

The Court has scheduled oral argument in this case for November 2, 2026. Appellees will participate.

## Statement of Jurisdiction

Plaintiff invoked the district court's subject-matter jurisdiction by asserting claims arising under the Constitution and 42 U.S.C. § 1983. ROA.23-31; 28 U.S.C. § 1331. But the district court lacked jurisdiction to adjudicate those claims for the reasons explained below. This Court has appellate jurisdiction over the district court's order denying Plaintiff's request for a preliminary injunction. ROA.894; 28 U.S.C. § 1292(a)(1). The district court entered its order denying the preliminary injunction on May 12, 2026, ROA.905, and Plaintiff timely appealed on June 5, 2026, ROA.1160; Fed. R. App. P. 4(a)(1)(A).

## Issues Presented

The issues presented are:

1. Whether Plaintiff lacks standing to bring this suit.
2. Whether sovereign immunity bars the relief that Plaintiff seeks.
3. Whether Plaintiff is likely to succeed on the merits of her First Amendment retaliation claim.
4. Whether Plaintiff meets the remaining requirements to obtain a preliminary injunction.

## Introduction

Plaintiff Ellen Fisher disrupted the operations of a Texas Tech law school clinic by loudly celebrating the murder of Charlie Kirk. Fisher was sanctioned not for the content and viewpoint of her speech; other law students who expressed similar views without disrupting the law clinic were not disciplined.

After a thorough investigation and a hearing where Fisher was represented by counsel, the law school's Honor Council found clear and convincing evidence that her actions were disruptive and unprofessional. They recommended that the law school's Dean, Jack Nowlin, issue a reprimand—the mildest sanction available. In response to a Texas Board of Law Examiners' inquiry (the "Board"), Dean Nowlin informed the Board about the reprimand, and offered his professional opinion that Fisher should not be admitted to practice law due not only to her disruptive conduct but also to what he perceived as an unwillingness to take responsibility and tell the truth during the disciplinary process.

Fisher has since graduated from Texas Tech with no further academic consequences from her reprimand. She nevertheless demands a preliminary injunction to compel Defendants to remove the reprimand from her record and withdraw the Dean's letter from the Board. But Fisher's demand runs up against several barriers.

First, Fisher lacks standing to seek a preliminary injunction because the injury that she fears—being denied admission to the Texas bar—is highly speculative and depends on the independent judgment of non-parties, namely, the Board and the Texas Supreme Court. Nor is this injury traceable to Defendants' reprimand of Fisher's conduct or redressable by the injunctive relief she seeks.

Second, sovereign immunity bars Fisher's request. The relief Fisher seeks is not proper under *Ex parte Young*.

Third, Fisher cannot show a strong likelihood of success on the merits of her First Amendment retaliation claim, the only claim she has brought. Texas Tech was entitled to reprimand Fisher because of her unprofessional disruptive conduct. Fisher cannot prevail under any standard because Defendants' actions were a reasonable academic and pedagogical response appropriate for maintaining professionalism in the law clinic and were not motivated by Fisher's viewpoint but by the disruptive impact of her actions.

Fisher also does not face irreparable harm because any injury is speculative and may be remedied without a preliminary injunction. And Defendants' interest in preventing disruption in the law clinic and being able to offer candid advice about students' qualifications to the Board outweigh Fisher's interest in a preliminary injunction.

## Statement of the Case

In September 2025, the well-known political activist Charlie Kirk was murdered. Immediately afterwards, Plaintiff Ellen Fisher loudly celebrated his death in the Texas Tech University Law School's clinical suite during work hours. ROA.583, 586, 589, 598, 601-604, 607, 610, 613-14, 617-619, 622. One of the clinical instructors heard Fisher loudly exclaim "[t]his is the best day ever. I am so happy" and proclaim that "[t]hey shot that m--- f---." ROA.676, 675. This occurred while Fisher was a clinical student representing clients in the law school clinic under professional supervision. ROA.622. Fisher's loud and prolonged celebration caused significant disruption causing at least two students to leave the clinic early because of the noise and disruption. ROA.583, 639, 679.

Fisher's actions were thoroughly investigated by an Honor Code investigator, who interviewed at least 19 individuals and referred the matter to the school's Honor Council. ROA.601-604. The investigation focused not on Fisher's viewpoint but on whether Fisher engaged in unprofessional conduct in violation of section 2.H of the Texas Tech Honor Code for "failing to uphold professional or fiduciary obligations" in her "performance related to clinical programs." ROA.598.

In March 2026, the Honor Council issued a thorough report that examined the testimony and evidence before it and determined that clear and convincing evidence supported the conclusion that Fisher violated section 2.H. ROA. 643-49.[1] The Honor Council specifically concluded that Fisher's actions "interfered with [the]

[1] Fisher erroneously states that the Honor Council's recommendation came on May 11, 2026, rather than March 11, 2026. Appellant Br. 14.

normal work routine" of students and a faculty member. ROA.646. It recommended a sanction of a written letter of reprimand. ROA.648-49.

On March 27, Fisher requested that Associate Dean Gonzales review the Honor Council's decision. ROA.593. On April 13, 2026, Dean Gonzales determined that the Honor Council's finding was not clearly erroneous and that the Honor Council had not improperly recommended a reprimand against Fisher for expressing a particular viewpoint. ROA.595. Accordingly, that same day, Dean Nowlin sent a letter to Fisher serving as a formal reprimand. ROA.663-64.

The previous month, the Board had requested that Texas Tech complete a dean's character and fitness certification for Fisher's request for admission to the Texas Bar. ROA.654. Associate Dean for Student Life Sofia Chapman wrote a letter to the Board on April 7, 2026, informing them of Fisher's actions. ROA.680. Then, Dean Nowlin, on the same day that he sent Fisher the formal reprimand, filled out the certification form recommending against Fisher's admission. ROA.670-71. In a letter accompanying the form, Dean Nowlin explained that this was because Fisher had 1) disrupted the operations of the clinic; 2) failed to take responsibility or show remorse for her unprofessional actions; and 3) been dishonest during the Honor Code proceedings. ROA.666-68.

The same day that Dean Nowlin issued his reprimand and sent the recommendation letter, Fisher filed her complaint. ROA.58. However, the complaint was not properly served on Defendants until after Nowlin sent the reprimand and letter. ROA.419, 433.

Fisher sued each of the officers and members of the Texas Tech Board of Regents, Dean Nowlin, Dean Gonzales, each member of the Honor Council, and Professor Terri Morgeson, the director of one the clinics operating in Texas Tech's clinical suite. ROA.60-62. Fisher also filed for emergency relief, seeking a temporary restraining order and a preliminary injunction. ROA.92-120. Fisher specifically asked the Court to enjoin Defendants "from entering a Reprimand and annulling all disciplinary action against Plaintiff Ellie Fisher." ROA.120. However, in her reply brief she admitted that this relief was moot and instead "requested additional injunctive relief" namely "directing Defendants not only to annul all disciplinary action against her but to notify the Board that Dean Nowlin's retaliatory report is retracted pending outcome of this case." ROA.879.

On May 12, 2026, the district court denied Plaintiff's request for a temporary restraining order and preliminary injunction. ROA.905. The court found that all the Defendants other than Dean Nowlin, Dean Gonzales, and the members of the Board of Regents were not proper defendants under *Ex parte Young*, ROA.900, and that the requested injunctive relief was impermissibly retrospective. ROA.902-04. The court reasoned that the relief sought would amount to "annulling defendants' past disciplinary action against Fisher" which was "'quintessentially retrospective.'" ROA.901 (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) (en banc)). Furthermore, there was no "future action" to enjoin given that the Board had already been informed of the reprimand. ROA.903. Accordingly, "*Ex parte Young*'s narrow doorway is locked to Fisher." ROA. 902. Fisher then filed this appeal. ROA.1160-74.

## Summary of the Argument

The district court correctly denied Fisher's request for a preliminary injunction for four reasons.

*First*, Fisher lacks standing to seek a preliminary injunction. She does not face an imminent injury. She has already graduated from Texas Tech, the reprimand against her has already been issued, and her application and Dean Nowlin's recommendation against her admission are pending before the Board. Her theory of injury depends on the Board and the Texas Supreme Court—neither of which is a party to this lawsuit—barring her from practicing law due to the reprimand or Dean's letter. But the Board is free to act independently regarding her admission to the bar, so Fisher's purported injuries are not traceable to the Defendants or redressable by the relief she is seeking.

*Second*, Fisher's request to rescind the reprimand and withdraw notice of it from the Board is also impermissible under *Ex parte Young*. All of the Defendants except for Dean Nowlin lack the necessary enforcement connection. And the nature of relief Fisher seeks is improper in three respects: 1) it is not properly characterized as prospective since it concerns only the completed action of reprimanding Fisher; 2) it is not directed at preventing Defendants' future violations of federal law (an independent requirement under *Ex parte Young*); and 3) relief directing that Defendants take certain actions towards the Board would compel state officers to make discretionary policy choices.

*Third*, Fisher is unlikely to prevail on the merits of her First Amendment retaliation claim. Whether Fisher's claim is evaluated under the *Pickering* test because she

was working for the law clinic at the time, under the non-employee retaliation test, or under the framework of forum analysis and tiers of scrutiny, the outcome is the same. The factual findings of the Honor Council are entitled to substantial deference, and Fisher's selective citation to some exculpatory evidence does not diminish the Honor Council's well-reasoned determination that Fisher's actions were unprofessional and disrupted the operations of the clinic. The reprimand was not directed at stifling Fisher's viewpoint (as shown by the fact that other students expressed similar viewpoints in less disruptive ways and received no punishment). And Defendants were entitled to discipline Fisher in furtherance of their academic judgment, to prevent disruption, and to serve legitimate pedagogical goals.

*Fourth*, Fisher cannot meet the remaining preliminary injunction factors. Her feared injury is speculative rather than imminent and irreparable. And her interest in expressing herself in a loud and disruptive manner during the open hours of a law clinic is far outweighed by the state's interests. Fisher was not entitled to a preliminary injunction.

## Standard of Review

The district court's decision "against issuing a preliminary injunction is reviewed under an abuse of discretion standard." *Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1020 (5th Cir. 2023). Findings of fact are reviewed for clear error, while "[c]onclusions of law are reviewed de novo." *Id.*

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To qualify Fisher "must show '(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief.'" *Vapor Tech. Ass'n v. Graham*, 167 F.4th 302, 305 (5th Cir. 2026). Fisher cannot do so.

# ARGUMENT

## I. Fisher Lacks Standing.

To establish Article III standing, Fisher must show a concrete and particularized injury, fairly traceable to the challenged action of the defendant, and likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Fisher must "demonstrate standing … for each form of relief that [she] seek[s]," and make a "clear showing" for each element of standing. *Murthy v. Missouri*, 603 U.S. 43, 58, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). "No standing means no likelihood of success on the merits." *Vapor Tech.*, 167 F.4th at 305. Fisher lacks standing for the relief she requests.

### A. Fisher has not shown a credible threat of injury.

To show Article III standing, plaintiffs must allege an injury in fact—*i.e.*, an invasion of a "legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. "Allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). While imminence is "a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* Fisher must show "a substantial threat" that she *will* suffer an injury. *Wang v. Paxton*, 161 F.4th 357, 362 (5th Cir. 2025). She does not even attempt to do so in her opening brief, never explaining why the injury she fears is imminent or a substantial threat.

Fisher cannot make this showing because her injury is "speculative and depends in large part on the action of third-part[ies]." *Zimmerman v. City of Austin*, 881 F.3d

378, 390 (5th Cir. 2018). *See also Computer & Commc'ns Indus. Ass'n v. Paxton*, No. 24-50721, 2026 WL 2130729, at *6 (5th Cir. July 24, 2026) ("an injury cannot be the result of the independent action of some third party not before the court"). Her injury depends on the Board determining that Fisher is not qualified to practice law, as well as the Texas Supreme Court that ultimately determines whether to issue licenses to practice law. Tex. Gov. Code § 82.021.[2]

In *Clapper*, the Supreme Court rejected a theory of standing that depended "on speculation about the decisions of independent actors." 568 U.S. at 414. In *Deep South Center for Environmental Justice v. EPA*, 138 F.4th 310, 321-22 (5th Cir. 2025), this Court followed *Clapper* in concluding that there was no Article III standing when an injury depended on whether Louisiana would issue a permit because that was "a decision of independent actors," and the plaintiffs could "only speculate about how Louisiana will operate its program and grant [the] permits." *Id.* (cleaned up). And in *Glass v. Paxton*, 900 F.3d 233, 241 (5th Cir. 2018), this Court found that a professors' First Amendment claims were barred because they depended on the "independent decision-making" of students bringing firearms to class.

Just like the decisions in *Clapper*, *Deep South*, and *Glass*, the decision of whether to admit Fisher to the bar involves the Board's independent decision-making. Fisher therefore cannot show that an adverse bar determination is "certainly impending."

---

[2] Any impact that the completed reprimand has on Fisher's reputation is a collateral consequence of an already completed action and does not entitle her to preliminary injunctive relief. *See Infra* Section II.

Fisher's allegation that she "intends to seek admission to" other state bars and therefore fears further dissemination of the reprimand fares no better. Appellant's Br. 16. Fisher provides no details about when she might apply to these state bars. These "some day intentions" lack "any description of concrete plans" and therefore cannot confer standing. *Lujan*, 504 U.S. at 564. Any injury would also depend on the independent actions of those state bars, including asking for information about the reprimand and denying admission because of it, which is pure speculation.[3]

### B. Fisher has not established traceability or redressability.

Nor can Fisher establish that any adverse action from the Board is traceable to the actions of Defendants. "[S]tanding cannot exist where the injury 'depends on the unfettered choices made by independent actors' that 'the courts cannot presume either to control or predict.'" *Reule v. Jackson*, 114 F.4th 360, 367 (5th Cir. 2024) (quoting *Lujan*, 504 U.S. at 562). Fisher must show that "the defendant's actions produce a determinative or coercive effect upon" the Board. *Id.* (quoting *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019)). *See also California v. Texas*, 593 U.S. 659, 675 (2021). She cannot do so here.

---

[3] Nor is Fisher's standing theory bolstered by the First Amendment context. This presumption does not apply when "future enforcement is dependent upon decisions of third parties, who might one day proceed," *Burnett Specialists v. Cowen*, 140 F.4th 686, 694 (5th Cir. 2025). Further, it applies only "to pre-enforcement challenges to . . . statutes that facially restrict expressive activity by the class to which the plaintiff belongs." *Tex. State LULAC v. Elfant*, 52 F.4th 248, 257 (5th Cir. 2022). This case concerns neither a pre-enforcement challenge nor a facially restrictive statute or policy.

Nothing Defendants have done has "a determinative or coercive effect upon" the Board, an independent judicial agency that reports to the Texas Supreme Court. Fisher will ultimately only be denied admission if the Board "finds a clear and rational connection between a character trait of the applicant and the likelihood that the applicant would injure a client or obstruct the administration of justice if the applicant were licensed to practice law." Tex. Gov't Code § 82.028(c)(1). At most, Fisher can speculate that the Board will respond negatively to a reprimand—the least severe type of sanction that Texas Tech could have imposed on Fisher.

For the same reasons, Fisher cannot establish that the preliminary injunction she seeks will redress her injury. Nothing that Fisher asks for will prevent the Board from conducting an independent assessment of Fisher's behavior based on the information before it or the attention her actions and lawsuit have received in the press. [4] Nor would the relief Fisher seeks alter Dean Nowlin's adverse recommendation against her admission because of her failure to take accountability for her actions or her lack of honesty throughout the disciplinary process. ROA.666-68.[5]

* * *

[4] *See, e.g.,* Texas Tech Law Student Sues to Block Discipline Related to Charlie Kirk Comments, CBS AUSTIN (Apr. 13, 2026), https://cbsaustin.com/news/local/texas-tech-law-student-sues-to-block-discipline-related-to-charlie-kirk-comments.

[5] Fisher likewise does not mention Associate Dean Chapman's independent letter to the Board or ask for any relief regarding that letter. ROA.680.

Fisher lacks standing for the relief that she is seeking and "[b]ecause standing is a prerequisite to success on the merits, [Fisher's] failure to demonstrate it forecloses injunctive relief." *Vapor Tech. Ass'n*, 167 F.4th at 305.

## II. Sovereign Immunity Bars the Relief that Fisher Seeks.

As this Court has explained, *Ex parte Young*, 209 U.S. 123 (1908), creates "a narrow doorway through the sovereign immunity defense" and "[t]o turn the key on the *Ex parte Young* door, a plaintiff must sue the right defendants and ask for the right remedy." *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023).

### A. Fisher has sued improper Defendants.

To sue the right defendants under *Ex Parte Young*, a plaintiff must show that the state official has "some connection with the enforcement of" the law or policy being challenged. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024). "[E]nforcement," in this context, means "compulsion or constraint." *Id*. at 332.

The district court correctly found that many of the Defendants that Fisher sued, including the faculty members and student member of the Honor Council and Professor Morgeson, lacked any enforcement connection. ROA.900. Fisher does not challenge that conclusion.

The district court found that only Dean Nowlin, Dean Gonzales, and the Board of Regents have "some connection with the enforcement of" sanctions against Fisher. ROA.900. But this conclusion was incorrect as to Dean Gonzales and the Board of Regents.

Dean Gonzales reviewed the Honor Council's findings. However, he was not entitled to "modify or vacate the finding of a violation … made by the Honor Council" unless he found that the Council's findings were clearly erroneous. ROA.589. Once Gonzales approved the Honor Council's recommendation, Dean Nowlin was the one who actually issued the reprimand. ROA.696. Moreover, Dean Gonzales has no ongoing authority to rescind the reprimand, remove material from Fisher's record, or alter anything contained in Dean Nowlin's letter to the Board. Without any ongoing connection to the enforcement of discipline against Fisher, Dean Gonzales is not a proper *Ex parte Young* defendant.

Fisher similarly does not point to any role that the Regents have in enforcing student discipline, issuing reprimands, maintaining student files, or communicating with the Board. In the district court, she relied solely on *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023). ROA.880. But *Jackson* does not support the conclusion that members of the Board of Regents are automatically proper *Ex parte Young* defendants in every student discipline case. In *Jackson*, the Court held that the University of North Texas Board of Regents had "direct supervisory authority" over the campus officials that disciplined a faculty member. *Id.* at 368. This Court specifically noted that more was required than just a "general duty to see that the laws of the state are implemented" and pointed to the Board's specific "authority to countermand the decisions" of university officials and the fact that the professor had specifically sought "relief from the Board." *Id.* at 367-68.

Here, by contrast, the Texas Tech Board of Regents has not retained any power to enforce student discipline or review student discipline decisions. Indeed, Regents'

Rule 05.05 expressly states that the "board shall not serve as a hearing or appellate body for appeals of individuals decisions relating to admission, academic progress, disciplinary measures, dismissal, or other such matters pertaining to prospective, current, or former students." *See* Regents' Rules, https://www.texastech.edu/board-of-regents/regents-rules/chapter-05-student-affairs.pdf. Instead, "[i]ndividual appeals of such decisions are to be addressed through the procedures applicable to the respective component institution." *Id.* "[A] decision at the final level of review within the institution shall constitute final action on the appeal." *Id.* Because the Board of Regents chose to give away student disciplinary power to officials at each component institution and did not include a mechanism to review those decisions, the Board does not have a "scintilla of enforcement" authority over student disciplinary decisions and certainly no "authority to countermand the decisions" regarding Fisher's discipline. *Jackson*, 82 F.4th at 367-68. So, at most, Dean Nowlin is the only proper *Ex parte Young* defendant.

### B. Fisher seeks improper relief under *Ex parte Young*.

Fisher seeks relief that is not authorized by *Ex parte Young*. To seek relief under *Ex parte Young*, a "plaintiff must allege an ongoing violation of federal law" and "the relief must be properly characterized as prospective." *Ogg*, 105 F.4th at 325. These two requirements are independent: a plaintiff's claims may falter either because the relief he seeks is not truly prospective, *or* because she fails to identify an ongoing violation of her federal rights that defendants are committing or will imminently

commit. *Green Valley*, 969 F.3d at 471. "[A] complaint must allege that the defendant *is violating* federal law, not simply that the defendant *has done so*." *Id.* [6]

Fisher's brief never separates these requirements, and neither do several of the out-of-circuit decisions she relies on. She instead conflates the lingering harm of a past action, which goes to whether she is entitled to prospective relief, with an ongoing or imminent *violation of federal law*.

The Second Circuit's recent decision in a closely analogous case shows how these two requirements work together. *T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 78 (2d Cir. 2024). In that case, the Second Circuit held that a recent law school graduate's request for an injunction preventing the New York Bar "from maintaining and reporting records of Plaintiff's examination results received under discriminatory conditions" was barred by sovereign immunity because there was no "necessary nexus between the injunctive relief she seeks and the continuing violations." *Id.* at 93, 94. The court explained that "even if the *relief* is prospective," expungement of a record "is unavailable under *Ex parte Young*" when "it is aimed exclusively at a *past violation*" and "does not seek to remedy an alleged *ongoing violation* of federal law." *Id.* at 95.

So too here. Fisher cannot satisfy either requirement—particularly when she does not even attempt to meet the second.

---

[6] Fisher relies on *Williams v. Reeves*, 954 F.3d 729 (5th Cir. 2020) arguing that claims are not barred just because the injury "can be traced to a past action." But that doesn't limit a plaintiff's need to show an *ongoing constitutional violation*, as the plaintiff in *Williams* did by showing an ongoing deprivation of the right to adequate public schooling.

### 1. The relief Fisher seeks is not prospective.

The conduct Fisher challenges—a single reprimand and a one-time report to the Board—was completed on April 13, 2026. ROA.623-24. Relief that attacks a state official's "past actions," where the challenged action "is in the past," is "purely retrospective" and "plainly falls outside the bounds of *Ex parte Young*, and hence is barred." *United States v. Abbott*, 85 F.4th 328, 336 (5th Cir. 2023). The district court held exactly that, concluding that the requested expungement and retraction are "backwards looking." ROA.1177.

Fisher attempts to manufacture prospectivity by labelling the continued record of a reprimand or presence of the letter before the Board as ongoing injuries. But Fisher cannot simply "relabel" a "not-yet extinguished liability for a past breach" as a "continuing obligation." *Papasan v. Allain*, 478 U.S. 265, 280–81 (1986). The lingering record of a completed decision is a collateral consequence, not a present injury — and expungement of it is therefore retrospective, just as "voiding of a final state agency order" is "quintessentially retrospective and thus out of bounds under *Young*." *Green Valley*, 969 F.3d at 473 (cleaned up). As the district court correctly noted, Fisher seeks an injunction that is "packaged as prospective relief" but what she asks for requires "'the voiding of a final state' official's action." ROA.901.

Fisher argues that *Green Valley* supports the relief she is seeking, but that is incorrect. Appellant's Br. 33. The plaintiff in *Green Valley* sought to prevent the future decertification of the company's service area as well as the certification of other companies for that service area. *Green Valley*, 969 F.3d at 472. These were future arguably unlawful and harmful actions that the government agency being sued could be

prevented from taking. By contrast, the Defendants before this Court have already completed implementing the reprimand against Fisher and finished sending their recommendation to the Board, so there are no future actions that they could be enjoined from taking.

Fisher's lead authority, *Scott v. Flowers,* does not hold otherwise. 910 F.2d 201 (5th Cir. 1990). The Court in *Flowers* did not address whether an expungement is an appropriate form of relief under *Ex parte Young*. Indeed, it does not appear that this question was raised at all and the Court stated that its "holding is limited to the narrow question" before it. *Id.* at n.24. As the district court explained, *Flowers* "expressly cabins the scope of its holding" to that First Amendment merits question. ROA.1178. This Court is "not bound by implicit jurisdictional assumptions made in earlier cases." *BNSF Ry. Co. v. Fed. R.R. Admin.*, 105 F.4th 691, 697 n.4 (5th Cir. 2024). And "[w]here an opinion fails to address a question squarely, we will not treat it as binding precedent." *Richardson v. Tex. Sec'y of State,* 978 F.3d 220, 229 n.15 (5th Cir. 2020). Or as the Supreme Court has put it, "Drive-by jurisdictional ruling[s]" have "no precedential effect." *Wilkins v. United States*, 598 U.S. 152, 160 (2023); *accord* ROA.1178. Fisher argues that this logic does not apply because the "parties in those cases were grasping for jurisdiction." Appellant's Br. 25. But that misses the point: A merits holding on the First Amendment is not a sub silentio holding that *Young* authorizes expungement. *Flowers* therefore does not establish that the

relief that Fisher seeks is appropriate under *Ex parte Young*.[7] *See also Burch v. Barker*, 861 F.2d 1149 (9th Cir. 1988) (granting expungement without any analysis of *Ex parte Young).*

Some of Fisher's own authorities confirm that expungement is prospective *only* when the plaintiff shows the record inflicts ongoing or imminent injury. For instance, Fisher relies heavily on the Ninth Circuit's decision in *Jensen v. Brown*, 131 F.4th 677, 697 & n.14 (9th Cir. 2025). But the Ninth Circuit had previously explained that a plaintiff seeking expungement of records must show "why retention of the records here is an ongoing violation of their constitutional rights" that gives "rise to an imminent risk of injury." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995, 996 (9th Cir. 2023) (discussed in the context of standing). And the professor in *Jensen* had "alleged specific ongoing harm due to the negative documents in his personnel file" including having an ongoing impact on his ability to qualify for "future merit pay," "employment benefits[,] and other opportunities" at the college. *Jensen*, at 697 & n.14. The same is not true of Fisher who has graduated.

Other cited cases involve an expelled student or employee seeking reinstatement, which is plainly prospective relief to remedy the ongoing expulsion. *Papish v. Bd. of Curators,* 410 U.S. 667 (1973) (per curiam); *Elliott v. Hinds*, 786 F.2d 298 (7th Cir. 1986); *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994); *Malkan v. Mutua*, No. 12-CV-236-A, 2012 WL 4722688, at *7 (W.D.N.Y. Oct. 3, 2012). In other

[7] Nor does *Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203 (5th Cir. 2020) (per curiam) as in that case sovereign immunity was waived due to the state's removal of the case to federal court.

cases cited by Fisher the plaintiff was not seeking expungement at all. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 841 (9th Cir. 1997); *Daniels v. Tex. Dep't of Transp.*, No. 4:15-CV-00702-CAN, 2016 WL 7034518, at *3 (E.D. Tex. Dec. 2, 2016) (same). These cases contain no support for Fisher's stand-alone request for lifting a reprimand.

Fisher claims that until this case "the lower courts of the Fifth Circuit treated expungement as a prospective remedy," Appellant's Br. at 28. Not so. A district court in this circuit held that a student's demand that a Texas university "strike from its records all negative information, emails, evaluations, and materials" was a retrospective "attempt to fix a past wrong." *Accord Cook v. Stephen F. Austin Univ.,* No. 9:19-CV-201-RC-ZJH, 2020 WL 6553963, at *5 (E.D. Tex. Oct. 21, 2020). Fisher's demand to expunge her file is indistinguishable — and weaker, because the student in *Cook* was also looking for reinstatement, *id.* at *1.

Fisher also argues the relief she seeks is appropriate because she seeks to preserve the status quo that existed the day she filed her lawsuit. But this Court's caselaw does not require it to ignore permanent changes to the status quo such as Fisher's graduation from Texas Tech or to disregard the requirement that *Ex parte Young* only allows relief to remedy ongoing violations of federal law causing ongoing harm. *Green Valley*, 969 F.3d at 472-73. The "status quo" is not relevant to the requirements of seeking a proper form of relief under *Ex parte Young*. *See Ogg*, 105 F.4th at 325. If Fisher's theory were law, every completed state action would remain subject to an injunction so long as a lawsuit was filed. That has never been the law in

this Court, and the Court should reject it because it would critically undermine sovereign immunity.

### 2. Even if the relief were prospective, it is not directed at any ongoing violation of federal law.

Fisher likewise cannot satisfy *Young*'s second independent requirement. As the Second Circuit explained in *T.W.*, if Fisher cannot identify future unlawful actions that *these* Defendants will take that an injunction would prevent, then the relief she seeks is barred by *Ex parte Young* "even if the *relief* is prospective." *T.W.*, 110 F.4th at 95. Fisher must identify a "necessary nexus" between the relief she seeks and a continuing violation, *T.W.*, 110 F.4th at 94. Fisher identifies none. She challenges a single completed reprimand and a one-time report; there is no ongoing policy, practice, or course of conduct directed at her or at anyone else that an injunction can prevent.

The facts of *Jackson,* one of Fisher's principal Fifth Circuit authorities, demonstrate the kind of nexus that Fisher fails to demonstrate. The professor in *Jackson* identified both a continuing injury and an ongoing violation of federal law. Specifically, the professor was "banned by UNT from any continuing involvement with the journal that he founded but could no longer publish in," and the University threatened to "eliminate resources previously provided to the Journal and the Center" in retaliation for Jackson's speech. 82 F.4th at 369. Crucially, these were actions that the defendants in that case were actively taking or had threatened to take, and the plaintiff alleged that those ongoing actions violated the First Amendment, *Id.* By contrast, Fisher has graduated and identifies no continuing or future actions that

Defendants will take against her, only a completed reprimand and a one-time letter to the Board. And most crucially, Fisher cannot allege that anything the Defendants are doing now or are likely to do in the future violates the First Amendment.

Fisher also relies on *Shah v. University of Texas Southwestern Medical School*, 129 F. Supp. 3d 480 (N.D. Tex. 2015), but that case is distinguishable for the same reason. In it, a district court granted an injunction preventing a Texas medical school from sending a student's medical records to third parties or other schools. The Court's injunction focused on preventing the university "from disseminating this information to other universities." *Id.* at 490. The court noted that the concrete allegations that the student would imminently apply to other medical schools set the case apart from a case where "the constitutional violation was a discrete act that took place only in the past." *Id.* at 496.

Here by contrast, Fisher seeks to rescind a reprimand that was already issued and force Defendants to withdraw and qualify a recommendation that they already submitted to the Board. As already discussed, Fisher at most offers the conclusory and non-specific allegation that she might apply to other state bars at some point in the future. Fisher has therefore not pointed to an imminent action that Defendants will take against her that would violate the First Amendment.[8]

Other cases that Fisher relies on fail to engage with this prong of *Ex parte Young*. As the Second Circuit explained when distinguishing the Ninth Circuit's decision in

---

[8] Even if Fisher's non-specific allegations regarding applications to other state bars sufficed, it would only authorize an injunction against the dissemination of information to these other states, not the rescission of what was already sent to the Board.

*Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007), the Ninth Circuit simply did not consider whether the defendants in that case sought to "remedy an alleged *ongoing violation* of federal law." *T.W.*, 110 F.4th at 95. The same is largely true with *Morgan v. Board of Professional Responsibility of the Supreme Court of Tennessee*, 63 F.4th 510, 516-18 (6th Cir. 2023), but this case offers even weaker support for Fisher's relief because the Sixth Circuit actually *affirmed* the dismissal since the plaintiff failed to plead that the official was sued in her official capacity. Accordingly, the court's cursory analysis of the ongoing violation requirement was not necessary to the court's holding and therefore far less persuasive than the Second Circuit's thoughtful and detailed decision in *T.W. See also Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) (conflating ongoing harm with an ongoing violation); *Doe v. Cummins*, 662 F. App'x 437, 442 (6th Cir. 2016) (same); *Shepard v. Irving*, 77 F. App'x 615 (4th Cir. 2003) (same).

**3. Fisher's demand that the Defendants retract Dean Nowlin's letter from the Board is independently barred because it would compel affirmative, discretionary state action.**

Fisher's demand that Defendants retract Dean Nowlin's letter from before the Board is also problematic for another reason. *Ex parte Young* does not allow relief that "will require affirmative action by the sovereign." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949). At a minimum, *Ex parte Young* cannot permit injunctions that "control" state officials "in [their] exercise of discretionary functions." *Richardson*, 978 F.3d at 241. But that is precisely what Fisher demands by asking Defendants to retract Nowlin's letter from the Board. Dean Nowlin notified

the Board of the reprimand in a detailed letter to the Board expressing his views on Fisher's qualifications to practice law. ROA.666-68. Demanding that Nowlin rescind or alter that letter would require Nowlin to take an affirmative discretionary step and interfere with his right to express his views on Fisher's qualifications to the Board and with Texas Tech's vital role of providing information that lets the Board carry out its crucial function of ensuring the character and fitness of those who are licensed to practice law. *See also Infra* Sections III.C, III.D.4. Such relief interferes with the sovereignty of the State of Texas and is improper under *Ex parte Young*.

## III. Fisher is Unlikely to Succeed on the Merits.

If the Court determines that Fisher has standing and that her claims are not barred by *Ex parte Young*, it should nevertheless conclude that *Fisher* is unlikely to succeed on the merits. Fisher's claim fails on the merits under the correct legal framework — and it fails even under the frameworks she incorrectly invokes.

Fisher pleads a single claim: First Amendment retaliation. ROA.88. That claim is governed by the retaliation standard, which differs depending on whether Fisher is considered a public employee or a student. But both tests require proof that Defendants' actions were motivated by her speech and that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391 (2019); *Batyukova v. Doege*, 994 F.3d 717, 731 (5th Cir. 2021).

Fisher attempts to instead recast her retaliation claim as a direct restriction on speech and asks this Court to run a public-forum analysis and apply strict scrutiny. Appellant's Br. 46. Forum analysis and strict scrutiny are a mismatch and the wrong inquiry. But it ultimately makes no difference: the reprimand was a viewpoint-

neutral, reasonable response to disruptive conduct in a professional training setting, and so it survives every standard Fisher proposes.

Because the application of these standards is fact dependent, Defendants first turn to what the Honor Council found about Fisher's disruptive conduct and respond to Fisher's attempts to mischaracterize the factual record. Defendants then demonstrate that Fisher's request fails under the correct standard and every alternative she proposes.

### A. The Honor Council's factual findings amply support its conclusion that Fisher's actions were disruptive, and they are entitled to deference.

The Honor Council's factual findings should be upheld "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999) (per curiam); *Patel v. Texas Tech Univ.*, 941 F.3d 743, 748 (5th Cir. 2019). As this Court has explained, "'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'" *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (*quoting Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). While these cases arose in the context of due process challenges to academic and

disciplinary decisions, this deferential posture applies with full force when evaluating Texas Tech's factual determinations here.[9]

The investigator conducted a thorough investigation, interviewing 19 individuals, and the Honor Council took extensive live testimony and reviewed supplemental affidavits. ROA.142-145, 147-264. The Honor Council reached its conclusion based on the substantial evidence before it. ROA.689-694. Rather than ignoring exculpatory evidence as Fisher suggests, the Honor Council candidly acknowledged both the strengths and limitations of the evidence before it, including noting places where the testimony appeared contradictory. ROA.647-48. And the Honor Council also published the dissenting views of one of its members, hardly the actions of a "blatantly biased report." *Id.* Because its findings were "reached by correct procedures and supported by substantial evidence" they are "entitled to great weight." *Ferguson v. Thomas*, 430 F.2d 852, 859 (5th Cir. 1970). The Court should reject Fisher's demand that it "lightly substitute its judgment for that" of Texas Tech officials. *Id.*

In any event, the record amply supports the Honor Council's conclusions. Fisher selectively points to exculpatory evidence and impugns the motives of witnesses to present a radically different version of the facts. For instance, she claims that "no evidence suggests impaired work performance at TTU." Appellant's Br. 44. But she ignores the Honor Council's explicit determination that Fisher's actions

[9] On the other hand, Defendants are entitled to "no deference" on whether their actions "exceeded constitutional constraints." *Christian Legal Soc'y Chapter of the Univ. of California v. Martinez*, 561 U.S. 661, 686 (2010).

"interfered with [the] normal work routine" of students and a faculty member, ROA.646 and corroborating testimony of two students asking to go home early. ROA.583, 639, 679. *See also* ROA.614, 679 (Professor Morgeson explaining that she was afraid to make phone calls to clients). Fisher accuses Morgeson of "ever-prevaricating," Appellant's Br. 11, ignoring significant corroborating evidence supporting her narrative, including from student witness Madison Wright. Indeed, Fisher selectively quotes slivers of Madison Wright's testimony to support her recollection, but ignores that Wright's testimony corroborated key aspects of Morgeson's testimony including Fisher's "best day ever" remarks. ROA.646-47, 740. Fisher likewise falsely claims that Morgeson retracted key parts of her testimony including Fisher declaring "they shot that m--- f---" even though she reported this statement contemporaneously to Professor McDonald and never retracted it.[10] ROA.607. Fisher also selectively credits Professor Metze's later self-interest remarks (failing to mention that Professor Metze was being investigated for his failure to restrain Fisher), rather than Dean Nowlin and Professor McDonald's recounting of his contemporaneous statements. ROA.607, 610. Nevertheless, Metze's remarks supported key aspects of the Honor Council's conclusions including corroborating Fisher's profane declaration. ROA.602-03.

The harsh rhetoric in Fisher's brief regarding the disciplinary process also does not comport with reality. Texas Tech's disciplinary process was not about

[10] In her statements more than six months later, Morgeson noted that she could "not clearly recall whether [Fisher] also used profanity," not the retraction that Fisher suggests. ROA.613, 616-17 (labelled as Student 2).

safeguarding "fragile conservative students" or preventing offense, but about preserving decorum and professionalism in a work environment that resembles a law firm. Nor does this "infantilize" Texas Tech's students. Appellant's Br. 46. Instead, these standards are designed to prepare the students for working in professional legal environments as well as to protect the interests of clients that utilize the law school clinics. And contrary to Fisher's claims, she was not disciplined for private conversations in the offices of Professors, but only for her loud and disruptive declarations in the hallway of the law clinic. ROA.646. Fisher's efforts to distort the factual record do not therefore alter the Honor Council's well-reasoned conclusion that she engaged in unprofessional conduct in the law clinic.

### B. Fisher's claim is subject to *Pickering* balancing, and she is unlikely to prevail under that standard.

Because Fisher was working in the Texas Tech law clinic at the time of her disruptive outbursts, she was a public employee rather than an ordinary citizen or student. While this Court has never determined whether a graduate student performing professional tasks is evaluated as a public employee, several courts of appeal have done so for students performing similar professional tasks. *See Andersen v. McCotter*, 100 F.3d 723, 726 (10th Cir. 1996) (holding that a student intern, working for college credit in a penitentiary, was properly treated as a public employee rather than as a student in a First Amendment suit against the Department of Corrections.); *Hennessy v. City of Melrose*, 194 F.3d 237, 244–45 (1st Cir. 1999) (holding that a student teacher was a public employee because the "apprentice-type relationship more closely resembles an employer-employee relationship than a school-pupil

relationship."); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (practicum student at psychiatric hospital).

This standard is appropriate here because Texas Tech's law clinic offers students real-world experience through opportunities to provide free legal representation and counseling to real clients. While students are supervised by law professors, they "'are fully responsible for their cases, from intake to disposition.'" ROA.1209 (quoting *Criminal Defense Clinic*, TEXAS TECH UNIVERSITY SCHOOL OF LAW, https://www.depts.ttu.edu/law/clinics-and-externships/clinics/crim/index.php). This means that they are operating as public employees.

Employee speech claims are evaluated under the deferential *Pickering* balancing test. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Buchanan v. Alexander*, 919 F.3d 847, 852-53 (5th Cir. 2019) (applying *Pickering* to a university professor's classroom speech). Under this test, a plaintiff must establish that: 1) the plaintiff has suffered an adverse employment action; (2) the plaintiff was speaking as a citizen on a matter of public concern; (3) the plaintiff's interest in free speech on matters of public concern outweighs the defendant's interests in efficiently managing a public function; and (4) the defendant's action was motivated by the plaintiff's speech. *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).[11]

[11] For purposes of this appeal, Defendants will not contest that Charlie Kirk's murder is a matter of public concern or that the issuance of a reprimand qualifies as an adverse employment action.

Fisher cannot establish that defendant's actions were motivated by plaintiff's speech or that her interest in disrupting the operations of the law clinic outweighs Texas Tech's interest in efficiently managing its clinic.

**1. Texas Tech restricted Fisher's disruptive conduct, not her speech.**

Despite Plaintiff's framing of this case as a First Amendment retaliation claim for her "thought crimes," ROA.65, the evidence—reviewed by the Honor Council, and school administrators—overwhelmingly demonstrates that Plaintiff was reasonably reprimanded for her disruptive and unprofessional actions, not the viewpoints she expressed. The Honor Council specifically found that Fisher "fail[ed] to uphold professional or fiduciary obligations including, but not limited to, performance related to clinical programs." ROA.692. Because of that, Defendants' actions were not motivated by her speech, but by the disruption her unprofessional behavior caused. Or at a minimum, even if Defendants were motivated by the content of Fisher's speech, Defendants can establish that they "would have taken the same adverse employment action even in the absence of the protected conduct." *Charles v. Grief*, 522 F.3d 508, 516 n. 28 (5th Cir. 2008) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977) (cleaned up)). This is a complete defense against employer liability for First Amendment retaliation. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001). *See Texas v. Lesage*, 528 U.S. 18, 21 (1999) (per curiam) ("The government can avoid liability by proving that it would have made the same decision without the impermissible motive."); *Batyukova*, 994 F.3d at 731.

Nor does the fact that Fisher was reprimanded the same day that she filed her lawsuit, ROA.663-64, establish causation. Employee discipline "proceeding along lines previously contemplated, though not yet definitively determined" cannot prove retaliatory discrimination. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). *See Beattie*, 254 F.3d at 605 ("Timing alone does not create an inference that the termination is retaliatory"). Here, Dean Gonzales approving or Dean Nowlin executing the recommendation of the Honor Council that predated the filing of the lawsuit by more than a month does not support Fisher's allegations that these actions were retaliatory. And Fisher's accusation that her appeal "languished" and that Gonzales's decision was "rushed" and "perfunctory" is baseless. Appellant's Br. 14-15. Fisher only requested a review by Gonzales on March 27. ROA.593. Taking only a little more than two weeks (about how long it took Fisher to appeal the decision) to review the voluminous record and reach a decision is reasonable and provides no basis for Fisher's accusations. Nor was Dean Nowlin reporting the sanctions to the Board retaliatory, but a straightforward application of the honor code which states that "[t]he School of Law will report all matters in which the Honor Code Investigator determined that probable cause existed to believe that a violation of this Code occurred to the extent required by the [Board]." ROA.299. Indeed, Dean Nowlin would have reported Fisher's conduct "regardless of whether violations of th[e] Code were found" by the Honor Council. ROA.299.

Fisher relies on *Chiles v. Salazar*, 146 S. Ct. 1010 (2026) to argue that the Constitution does not offer diminished protection for "professional speech." But *Chiles* does not help her. There, the Court reaffirmed that "laws regulating conduct in ways

that incidentally sweep in speech may … generally avoid strict scrutiny," *id.* at 1023, and explained that the dispositive question is whether a law "restricts expressive conduct only for reasons unrelated to its content," *id.* at 1026.

That is the case here. Defendants applied a viewpoint-neutral professionalism standard reaching any student whose behavior interferes with "performance related to clinical programs," ROA.855, 859, and disciplined Fisher not for the views she expressed but for loud, prolonged disruption of clinic operations. ROA.614. That the discipline was unrelated to the content of Fisher's speech is shown by the fact that students who voiced similar views about Charlie Kirk, but did not disrupt the clinic, were not disciplined. ROA.89. That the disruptive behavior was carried out through speech does not immunize it: "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006).

Furthermore, *Chiles* arose far from this context. It concerned a direct, content-based restriction on a counselor's one-on-one speech with clients, not a university's enforcement of professional-conduct standards against one of its employees or students in a clinical training program. *Chiles* neither addressed nor diminished the deferential standard that applies in those contexts. *See Infra* Sections III.B.2, III.C.

Fisher also relies heavily on *Cohen v. California*, 403 U.S. 15 (1971), a case involving a citizen wearing a profane jacket inside a courthouse. Cohen did not involve pedagogical and curricular student speech at all, and there was no indication that

wearing a profane jacket materially disrupted the operation of the courthouse. Instead, the citizen was punished solely based on "'undifferentiated fear or apprehension of disturbance,'" *id.* at 23 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)), and disagreement with the message that his jacket conveyed. *Cohen* therefore has little relevance to this case.

**2. Defendants were entitled to reprimand Fisher for her disruptive conduct.**

Even if the Court determines that Fisher was reprimanded for her speech, Fisher cannot show that her interest in expressing herself in a loud and disruptive manner during the operational hours of the clinic outweighs Texas Tech's interest in maintaining a professional clinical environment and operating its law clinic without disruption. The *Pickering* balancing test is notably deferential because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568. In particular, public employees may be disciplined when their speech is "likely to generate controversy and disruption, impeded the school's general performance and operation, and affected working relationships necessary to the department's proper functioning." *Harris*, 168 F.3d at 223 (citing *Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir. 1988)). Under *Pickering*, a "reasonable prediction[] of disruption" is sufficient. *Waters v. Churchill*, 511 U.S. 661, 673 (1994).

Here, the Honor Council's thorough findings demonstrated not only that Texas Tech could make a "reasonable prediction[] of disruption," *id.*, but that actual

disruption had occurred. Fisher's outbursts celebrating a public murder were clearly "likely to generate controversy and disruption," *Harris*, 168 F.3d at 223. Her actions also "impeded the [clinic's] general performance and operation," *id.* The Honor Council specifically concluded that Fisher's actions "interfered with [the] normal work routine" of students and a faculty member. ROA.646. *See also* ROA.583, 639 (two students asking to go home early); ROA.614, 679 (Professor Morgeson explaining that she was afraid to make phone calls to clients). And her public celebration of a murder was likely to affect "working relationships necessary" for the clinics "proper functioning." *Harris*, 168 F.3d at 223. ROA.646 (finding that Fisher's remarks "could create conflict among co-workers that would interfere with [the] performance of work").

Those same facts distinguish this case from *Rankin v. McPherson*, 483 U.S. 378, 389 (1987), which involved an employee fired for making remarks sympathetic to the assassination attempt on President Reagan. The remarks in *Rankin*, were made in "a private conversation with another employee" in an area of the office that was not open to the public. *Id.* Furthermore, there was no evidence that the statement "interfered with the efficient functioning of the office," and this "had *not* been a consideration in [the] discharge" and the constable "did not even inquire whether the remark had disrupted the work of the office." *Id.* Here, in contrast, the Honor Council based its decision not on the viewpoint that Fisher expressed, but on her disruptive actions, something that the Supreme Court in *Rankin* recognized the State would have "a strong state interest" in preventing. *Id.* at 388. Therefore, Fisher is unlikely to prevail under the *Pickering* balancing test.

### C. Fisher is also unlikely to prevail under the ordinary retaliation standard.

To prevail under the retaliation standard that applies to non-employees, Fisher must show that she was 1) "engaged in constitutionally protected activity," (2) that "the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity,"[12] and (3) that "the defendants' adverse actions were *substantially* motivated against [her] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (emphasis added) (citations omitted).

Fisher's retaliation claim falters under this standard just as it falters under the public employee standard. First, Fisher cannot show that her speech "substantially motivated" the disciplinary actions against her. Instead, as already discussed, it was her highly disruptive and unprofessional behavior that motivated the discipline against her. *See Supra* Section III.A, III.B.1.

Second, Defendants were entitled to discipline her in light of the "manner, time, and place of the … expression, as well as the context in which the dispute arose." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 799 (5th Cir. 1989). This discipline was proper for three independent but interrelated reasons: 1) academic judgment; 2) pedagogical concerns; and 3) preventing disruption.

In the academic setting, the Supreme Court and this Court have long respected an institution's latitude to hold students to the pedagogical and professional norms

[12] For purposes of this appeal, Defendants do not contest that the issuance of a reprimand could chill a person of ordinary firmness from engaging in constitutionally protected speech.

of their discipline. That includes ensuring that students demonstrate "prospects for success in the … profession." *Wheeler*, 168 F.3d at 250.

The Court must also extend "great respect for the faculty's professional judgment" as "a special concern of the First Amendment," *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225-26 & n.12 (1985), and protect a college's "'significant measure of authority over the type of officially recognized activities in which their students participate,'" *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 686-87 (2010) (CLS) (quoting *Board of Ed. of Westside Cmty. Schs. (Dist.66) v. Mergens*, 496 U.S. 226, 240 (1990)). *See Oyama v. Univ. of Haw.*, 813 F.3d 850, 863 (9th Cir. 2015) (applying this academic deference in the context of a First Amendment retaliation claim). Texas Tech was entitled to evaluate Fisher's conduct according to "that standard by which [s]he would be measured once admitted to the profession for which [her] degree was to prepare [her]." *Marinello v. Bushby*, 163 F.3d 1356, 1998 WL 857879, at *3 (5th Cir. 1998) (Smith, J.) (citation omitted).

That is precisely what Defendants did here. Discipline was based on the application of "the same ethical rules and professionalism standards" that would apply to a "duly licensed attorney." ROA.269. The reprimand was based on the conclusion that Fisher's conduct was "radically inconsistent with widely recognized professional expectations in law firm spaces." ROA.666. Indeed, Fisher herself acknowledged that "clients are frequently present" in the clinic and that "behaving in the manner alleged would be wrong" and "unprofessional." ROA.603 (describing Fisher's testimony to the investigator).

As the Sixth Circuit noted in a case involving dismissal of a medical student for lack of professionalism, determining whether a student exhibits sufficient professionalism is "a deference-receiving academic judgment." *Al-Dabagh v. Case W. Rsrv. Univ.*, 777 F.3d 355, 359 (6th Cir. 2015). And Dean Nowlin's decision not to recommend Fisher for admission to the bar is likewise an act of academic judgment in furtherance of the "mandate of limiting certification recommendations to students who meet the standards for the [legal] profession." *Oyama*, 813 F.3d at 863 (student teacher).

Fisher's participation in the law clinic was also part of the law school curriculum. Universities have "license to choose among pedagogical approaches," *CLS*, 561 U.S. at 686 , and to act to safeguard "legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (cited in *CLS*, 561 U.S. at 686).

Defendants were allowed to discipline Fisher so long as doing so was reasonably related to "legitimate pedagogical reasons." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 350 (5th Cir. 2017) (applying this standard in the K-12 context). While this Court has not done so expressly, several other circuits have applied this standard in the context of graduate students engaging in curricular speech. *Keefe v. Adams*, 840 F.3d 523, 531-32 (8th Cir. 2016) (nursing student removed for unprofessional posts); *Keeton v. Anderson-Wiley*, 664 F.3d 865, 875 (11th Cir. 2011) (clinical practicum). *See also Hosty v. Carter*, 412 F.3d 731, 737 (7th Cir. 2005) (en banc) (acknowledging that pedagogical concerns could justify a college's restriction on a campus paper if controlled by the university or part of the curriculum); *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012) (noting that a graduate student in counseling program

could not "exercise a First Amendment veto" over pedagogical requirements, but ultimately ruling that there was a genuine issue of disputed fact over whether the professor acted out of pretext); *Brown v. Li*, 308 F.3d 939, 943 (9th Cir. 2002) (graduate program entitled to take action against student who included a profane "disacknowledgements" section in his thesis); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1293 (10th Cir. 2004) (recognizing deference to pedagogical concerns of a university, but determining that there was a genuine issue of fact as to whether the university acted out of pretext for religious discrimination).

As the Eighth Circuit noted, "a college or university may have an even stronger interest in the content of its curriculum and imposing academic discipline" than a high school. *Keefe*, 840 F.3d at 531. That is true for the law clinic where Texas Tech has a strong interest in teaching its students to behave professionally in settings where clients could be present. Indeed, the Eleventh Circuit in *Keeton* affirmatively noted that a law school setting standards for law school students to participate in "school-run clinic in which the student would be representing actual clients" would be entitled to "significant deference, not exacting constitutional scrutiny." 664 F.3d at 879.

The First Amendment also does not require a law school to ignore a student's disruptive behavior. "Students, teachers, and professors are not permitted to say anything and everything simply because the words are uttered in the classroom context." *Buchanan*, 919 F.3d at 852. While campuses are not "immune from the sweep of the First Amendment," this Court must proceed "with special caution, recognizing the mutual interest of students, faculty members, and administrators in an

environment free from disruptive interference with the educational process." *Healy v. James*, 408 U.S. 169, 171, 180 (1972). Defendants were entitled to "prescribe and control conduct" in order to prevent material disruption. *Tinker*, 393 U.S. at 507; *see Shamloo v. Miss. State Bd. of Trs. of Insts. of Higher Learning*, 620 F.2d 516, 521 (5th Cir. 1980) (citing the *Tinker* standard in the college context); *Esfeller v. O'Keefe*, 391 F. App'x 337, 341 (5th Cir. 2010) (per curiam) (same). Justifying "the proscription of student speech" in such contexts is not a "difficult burden" particularly when there is evidence that the expressive conduct in question "has in fact been disruptive," *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 224 (5th Cir. 2009), as there is here, *see supra* Section III.A. Defendants were entitled to reprimand Fisher for her disruptive behavior that hindered the functioning of the law clinic.

### D. Fisher's claim also falters when examining tiers of scrutiny and forum analysis.

#### 1. The law school clinic was a limited or nonpublic forum.

Contrary to Fisher's claims, the law school clinic is at most a limited forum opened for "the discussion of certain topics," *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001)—specifically matters pertaining to the students' clinical cases—not a public forum open for all kinds of speech. Accordingly, Defendants could limit Fisher's speech so long as the restriction was "reasonable in light of the purpose served by the forum" and did not discriminate based on viewpoint. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426–27 (5th Cir. 2020) (FFRF).

Fisher claims that the law clinic is a designated public forum that Texas Tech has opened up "for students to speak on controversial issues." Appellant's Br. 48. This is highly implausible. This is first shown by Fisher describing the space as one "for students to speak[.]" Appellant's Br. 48. If the space is limited to students who are members of the clinic, then Texas Tech already exerts limitations on access and who can speak that are far more restrictive than those that are appropriate for traditional public forums like parks and public sidewalks. But Texas Tech's clinic office is limited even further for *students* who are members of the clinic to be able to carry out their clinical duties and assignments. While Texas Tech may allow students "to speak on controversial issues" while in the clinic, this does not mean that Texas Tech has "intentionally open[ed] [up the clinic] for public discourse" and rendered it the equivalent of a public sidewalk or town square. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 347 (5th Cir. 2001) (per curiam).

Furthermore, Texas Tech policy designates Outdoor Common Areas "as a limited public forum where only University Members are permitted to engage in expressive activities" subject to "reasonable time, place, and manner restrictions" and prohibits activities that "substantially disrupt the normal operations of the University's campus." ROA.311. If even outdoor spaces like fields and sidewalks are designated as limited public forums, then it is unreasonable to think that Texas Tech has intentionally opened up an active law clinic as a designated public forum.

Nor can Fisher point to "evidence of a purposeful designation for public use" as she is required to do. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 805 (1985). The only thing that Fisher points to is language in the law schools'

Academic Freedom and Freedom of Expression Policy and Statement of Compliance which mentions that "freedom of expression in the law school" extends to "client representation in clinical programs." ROA.317. But Fisher does not point out that this document expressly prohibits "disruptive conduct" that interferes with "the carrying out of Law School functions" and "allow[s] for reasonable time, place, and manner regulations of expression," ROA.317, which contradicts the notion that the clinic was "intentionally opened" for unrestricted public discourse. And because the clinic's "principal function" could "be disrupted by expressive activity," this Court should be "particularly reluctant to hold that the government intended to designate a public forum." *Cornelius*, 473 U.S. at 804.

### 2. Texas Tech did not engage in viewpoint discrimination.

The record continually shows that Texas Tech disciplined Fisher for the disruptive effect of her conduct and not for her viewpoint. [13] Accordingly, Fisher's contention that a finding of viewpoint discrimination would end the analysis regardless of the forum's classification is inapplicable. *See* Appellant's Br. 43 (*citing Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992)).

This is most clearly shown by the fact that other students who expressed negative viewpoints about Charlie Kirk were not disciplined. For instance, at least one

[13] ROA.589 ("the Honor Council's finding was based on Ms. Fisher's conduct as opposed to the viewpoint expressed."); ROA.598 ("I did not consider any viewpoint expressed by Ms. Fisher in my investigation."); ROA.624("My recommendation against Ms. Fisher's admission to the Texas Bar was not based on any viewpoint she expressed but rather her unprofessional conduct in the Law School Clinic."); ROA.855, 859 ("The Honor Council did not consider the viewpoint of Ms. Fisher's comments in making its finding.").

other student announced during a law school class that Charlie Kirk had been shot and called him a "right-wing activist." ROA.110. Kirk was also referred to as a "racist or white supremacist." ROA.126. It was Plaintiff's disruptive and unprofessional conduct while working at Texas Tech's law clinic that set her apart from other students and led to the reprimand and Dean's letter. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010) (concluding that a policy barring the raising of personal grievances during board meetings was not "reflective of viewpoint preference" but a desire "to avoid irrelevant topics or extended contentious debate."). Unlike the plaintiffs in some of the cases that Fisher cites, Fisher was not punished because her views were "upsetting" or "offensive," but because of their disruptive effect. *See* Appellant's Br. 44 (citing *Snyder v. Phelps*, 562 U.S. 443, 458 (2011); *Texas v. Johnson*, 491 U.S. 397, 414 (1989)). Nor were Defendants imposing a "pall of orthodoxy over the classroom" as Fisher suggests. Appellant's Br. 41-42 (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)).

Indeed, Fisher herself recognizes that "other students expressed many of the same thoughts, emotions, and viewpoints expressed by Fisher" and were not disciplined. ROA.89. Fisher theorizes that she was singled out because of her race, mentioning her race or the race of other students a dozen times in her brief. Appellant's Br. at 1, 2, 5, 6, 9, 13, 14, 41, 42, 43, 44, 51. But Fisher's unsubstantiated accusations of racism are irrelevant because the operative complaint did not contain an equal protection claim, ROA.51, nor did she seek a preliminary injunction for race-based discrimination. Moreover, these accusations only further demonstrate that other

students who expressed similar views to Fisher were not punished for their viewpoint.[14]

### 3. Texas Tech's actions were reasonable in light of the academic purpose of the law clinic.

Defendants' restrictions were reasonable given the purpose of the law clinic. As already discussed, the purposes of the law clinic are to provide clients with professional high quality legal services, and to provide students with professional experiences in a real law-firm like setting. Defendants were therefore entitled to demand that students working in the clinic live up to the standards of the legal profession and not disrupt the operation of the clinic. Given this setting, it was reasonable for Defendants to reprimand Fisher for engaging in speech that was loud and highly disruptive as well as "radically inconsistent with widely recognized professional expectations in law firm spaces." ROA.666. *See Supra* Section III.C. Indeed, it bears reiterating that Fisher herself acknowledged that her speech would be unprofessional if clients were present in the clinic. ROA.603. As already discussed, Defendants were not required to tolerate such disruptive and unprofessional behavior from Fisher.

### 4. Fisher is not likely to prevail even if heightened scrutiny applies.

Even if heightened scrutiny applies, Fisher is still not substantially likely to prevail. A requirement that law students not engage in loud, disruptive, and

[14] Fisher cites *Mahmoud v. Taylor*, 606 U.S. 522, 555-56 (2025) for the proposition that "viewpoint discrimination in spaces such as the classroom, a professor's office, or the hallways of a university or college is illegal under *Tinker*." Appellant's Br. 38. But Mahmoud was a free exercise case that had to do with the parental right to opt students out of instruction hostile to the parents religiously held viewpoint. It has little relevance to the facts of this case.

unprofessional speech in the law clinic is a reasonable time, place, and manner restriction. Such restrictions are appropriate if they are 1) "justified without reference to the content of the regulated speech;" 2) "are narrowly tailored to serve a significant governmental interest;" and 3) "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Defendants punished Fisher for the disruptive effect of her speech—disrupting the operations of the clinic— "without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791. As already discussed, students who voiced the same views about Charlie Kirk without disrupting the clinic were not disciplined. ROA.89.

A reprimand was also narrowly tailored and in furtherance of significant governmental interests. Defendants' reprimand of Fisher was necessary to prevent behavior that "'materially disrupt[ed]'" the functioning of the clinic, *Keefe*, 840 F.3d at 531 (quoting *Hazelwood,* 484 U.S. at 284 (Brennan, J., dissenting)), and violated the professional norms that Texas Tech must instill in its students to prepare them "for success in the … profession." *Wheeler*, 168 F.3d at 250. Indeed, protecting Defendants' professional and pedagogical judgment is "a special concern of the First Amendment." *Ewing*, 474 U.S. at 226 . *See* Supra Section III.C.

Nor did the reprimand "burden substantially more speech than is necessary." *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992) (quoting *Ward*, 491 U.S. at 799). A reprimand was a modest and narrowly tailored sanction in response to Fisher's disruptive conduct.

Finally, there were ample alternative channels for Fisher's speech. Fisher was free to express herself at any number of other locations on campus including the Campus's Outdoor Common Areas. ROA.311. She was also free to have non-disruptive conversations about Charlie Kirk's assassination—as many other students did. ROA.110, 126. A restriction on loud and disruptive speech during the working hours of a law clinic is a modest restriction that leaves ample alternatives for the same message.

For the same reasons Fisher cannot prevail even under strict scrutiny. Appellant's Br. 46. Defendants' reprimand of Fisher was narrowly tailored and in furtherance of a compelling interest. As described, the law school's interest in preventing disruption in the law clinic where clients are regularly present and students are engaged in the actual practice of law is compelling. *See supra* Section III.C. And a mild reprimand of Fisher without any further academic consequences was the least severe consequence that Texas Tech could have imposed. Fisher was not suspended, expelled, or otherwise prevented from graduating because of her behavior. Indeed, Fisher acknowledges that she received an A in the clinical course despite the reprimand. Appellant's Br. 1. It is therefore difficult to see how Defendants could have safeguarded their compelling interests in a less restrictive manner.

The law school's truthful and accurate reporting of the discipline against Fisher to the Board and Dean Nowlin's recommendation against her admission likewise would survive any level of scrutiny. These actions provided the Board with information that will allow it to carry out its vital function in regulating the practice of law. The Supreme Court has noted that "States have a compelling interest in the

practice of professions within their boundaries" as well as the "broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975). This includes the power to regulate the practice of law, particularly because "lawyers are essential to the primary governmental function of administering justice" and are "officers of the courts." *Id.* States also have a "substantial interest in determining whether an applicant possesses the character and general fitness requisite for an attorney." *Application of Griffiths*, 413 U.S. 717, 722-23 (1973). Although the ultimate determination of an applicant's character and fitness is made by the Board and the Texas Supreme Court, law schools like Texas Tech play a vital role in informing the Board about relevant concerns, and their ability to make candid recommendations is crucial.

Finally, Fisher's unwillingness to take responsibility for her actions and lack of candor during the investigation also provided an additional justification for Dean Nowlin's concerns. ROA.624, 666-68, 696-97. Given the duty of candor to disciplinary authorities while seeking admission to the Bar, this provided an independent compelling basis for Dean Nowlin's professional recommendation. *See* Tex. Disciplinary Rules Prof'l Conduct R. 8.01, *reprinted* in Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9); *see also Sullivan v. Houston Indep. Sch. Dist.*, 475 F.2d 1071, 1076 (5th Cir. 1973) ("[O]pen disregard of school regulations is a sufficient and independent ground for imposing discipline.").

## IV. Fisher is Not Likely to Suffer Irreparable Harm.

Because Fisher "cannot show a substantial likelihood of success on the merits . . . there is no need for the court to address the other requirements." *Big Tyme Invs.*,

*L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021). Nevertheless, as discussed above, she cannot show any risk of imminent harm at all. *Supra* Section I.

Fisher argues that irreparable harm is presumed in the First Amendment context. Appellant's Br. 35-36. But the "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016). Because Fisher cannot show that her "First Amendment interests are either threatened or in fact being impaired at the time relief is sought," she cannot prove irreparable harm. *Id*. at 227-28 (quoting *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (cleaned up)); *see Stokes v. Boyce*, No. 3:25-CV-307-GHD-RP, 2026 WL 689951, at *5 (N.D. Miss. Mar. 11, 2026) (citing *Google* and refusing to apply a presumption of irreparable harm to "a single and discrete act that took place entirely in the past").

Fisher has graduated from Texas Tech, received an A in her clinical course, Appellant's Br. 1, and points to no other actions that Defendants could take that would chill her speech. She is therefore not entitled to a presumption of irreparable harm. S*ee Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (refusing to apply a presumption of irreparable harm when the challenged policy did not have a "chilling effect" on speech (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965))).[15]

---

[15] Fisher relies on *Mahmoud*, 606 U.S. at 569, to say that student reprimands cause irreparable harm. Appellant's Br. 35. But in that case, students were actively forced to participate in a curriculum contrary to their parents' deeply held religious beliefs. Here, Fisher has already graduated and faces no further risk that Defendants will violate her rights.

Since Fisher is not entitled to a presumption of irreparable harm, she must show that she faces "a significant threat of injury from the impending action," that "injury is imminent" and "that money damages would not fully repair the harm." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)). Fisher satisfies none of these requirements. There is no "impending action" by the Defendants to enjoin. Nor does the mere presence of a reprimand or any reputational harm qualify as irreparable harm as this could be "fully corrected" by a later determination in the ordinary course of litigation. *Sampson v. Murray*, 415 U.S. 61, 91 (1974). Because her "claim for expungement lacks immediacy," Fisher cannot establish irreparable harm. *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).

Furthermore, monetary damages may be available to Fisher if she can prevail on her individual capacity claims. And as the district court noted, money damages are "a meaningful remedy that precludes the need for injunctive relief here." ROA.904-05 n. 53. *Anibowei*, 70 F.4th at 902.

Finally, the possibility that she will be denied admission to the bar is a "remote future injury," *Winter*, 555 U.S at 22, based on speculative fears concerning the independent discretionary decisions of the Board and the Texas Supreme Court. *See supra* Section I; *Clapper,* 568 U.S. at 414. Furthermore, if Fisher is ultimately denied admission to the Texas Bar, she is free to challenge the actions of the Board directly.

## V. The Balance of Equities Does Not Favor a Preliminary Injunction.

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Fisher's

demand for a mandatory injunction requiring rescinding a reprimand and retracting Fisher's disciplinary record from the Board weighs heavily against Fisher as "particularly disfavored." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). *See Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-179, 2018 WL 1755392, at *2 (E.D. Tex. Apr. 11, 2018) (concluding that an injunction seeking reinstatement of expelled student was a mandatory injunction); *Pham v. Univ. of La.*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016) (same); *aff'd sub nom., Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017) (per curiam).

An injunction would also undercut Texas Tech's "basic educational mission," *Esfeller*, 391 F. App'x at 341, including maintaining the professionalism of its clinical programs for the benefit of Texas Tech students and the community. *Supra* Section III. Fisher's demand for a retraction of Dean Nowlin's letter from the Board would also infringe on the Defendants' academic freedom and "autonomous decisionmaking," *Ewing*, 474 U.S. at 226 n. 12, and prevent them from offering candid advice to the Board. Given these weighty interests, Fisher cannot make a "clear showing" that she is entitled to a preliminary injunction.

Finally, as the district court explained, the merits of this case turn on "numerous questions of law, many of which are intensely fact dependent." ROA.904 n. 52. That fact weighs against the issuance of a preliminary injunction—particularly a mandatory injunction—since Fisher cannot show "a clear entitlement to the relief under the facts and the law." *Justin Indus. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990) (per curiam). The district court did not abuse its discretion in refusing to grant a preliminary injunction.

## Conclusion and Prayer

For these reasons, the judgment of the district court should be affirmed.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Daniel Moshe Ortner
Daniel Moshe Ortner
Assistant Solicitor General
Daniel.Ortner@oag.texas.gov

*Counsel for Defendants-Appellees*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,991 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Daniel Moshe Ortner
Daniel Moshe Ortner