# No. 26-10536

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

Ellen Mae Fisher,

Plaintiff - Appellant

v.

Texas Tech University Regents; Dean Jack Wade Nowlin, Dean and W. Frank Newton Professor of Law at the School of Law; Jared Gonzales, In his individual and official capacity as Dean of the Texas Tech School of Law; Larry Spain, Alvin R. Allison Professor of Law and Director of the Clinical Programs and Civil Practice Clinic at the School of Law; Amy Hardberger, George W. McCleskey Professor of Water Law and Director of the Center for Water Law and Policy at the School of Law; Allison Outenreath, Associate Dean for Faculty Development, and the Erwin and Elaine Davenport Endowed Professor of Law at the School of Law; Ally Owens, Student member of the School of Law Honor Council; Terri Morgeson, In their individual and official capacities as Faculty and/or Officers of the Texas Tech School of Law Honor Council; Cody Campbell, Chairman of the Regents; Dustin Womble, Vice Chairman of the Regents; Arcilia Acosta, Member of the Regents; Pat Gordon, Member of the Regents; Clay C. Cash, Member of the Regents; Tim Culp, Member of the Regents; Shelly Sweatt, Member of the Regents; Doug McReaken, Member of the Regents; Donald Sinclair, Member of the Regents; Eli Heath, Member of the Regents; William Keffer; Texas Tech University System Board of Regents,

Defendants - Appellees

**On Appeal from**

United States District Court for the Northern District of Texas

5:26-CV-73

# REPLY OF PLAINTIFF-APPELLANT ELLEN FISHER

SUBMITTED BY:

Michael Thad Allen
Allen Harris, P.L.L.C.
P.O. Box 404
Quaker Hill, CT 06375
(860) 772-4738
mallen@Allenharrislaw.com

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

***Table of Contents*** ........ ***iii***

***Table of Authorities*** ........ ***iv***

**I. Procedural Background** ........ **1**

**II. Argument** ........ **2**

A. The Fifth Circuit Has Already Held that Retraction May Be Ordered as Prospective Relief ........ 2

B. Fisher Has Standing Due to Imminent, Traceable, and Redressable Harm Arising from Ongoing Violation of Her First Amendment Rights ........ 6

C. Expungement of Disciplinary Records Is Also Well-Established in the Federal Courts ........ 10

D. Pickering Does Not Apply ........ 13

E. Fisher Prevails Even if *Pickering* Applies, which It Does Not ........ 19

F. Defendant's Argument that Speech Was Not a Substantial or Motivating Factor Is Not Serious ........ 24

G. The Regents Are Proper Defendants ........ 25

H. Jack Nowlin and Jarod Gonzalez Are Proper Defendants ........ 28

**III. Conclusion** ........ **28**

***Certificate of Compliance in Compliance with Rule 32(a)*** ........ **30**

***Certificate of Service*** ........ **31**

## TABLE OF AUTHORITIES

### *Cases*

*Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) .......... 22

*Andersen v. McCotter*, 100 F.3d 723 (10th Cir. 1996) .......... 20, 21, 24

*Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379 (5th Cir. 2015) .......... 25

*Bevill v. Wheeler*, 103 F.4th 363 (5th Cir. 2024) .......... 24

*Branton v. City of Dall.*, 272 F.3d 730 (5th Cir. 2001) .......... 29

*Brawner v. Richardson*, 855 F.2d 187 (5th Cir. 1988) .......... 28

*Buchanan v. Alexander*, 919 F.3d 847 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 432 (2019) .......... 17

*CCIA v. Paxton*, Nos. 24-50721, 25-50096, 2026 U.S. App. LEXIS 22118 (5th Cir. July 24, 2026) .......... 9

*Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273 (5th Cir. 2003) .......... 18

*Christian Legal Soc'y Chapter of the Univ. of California v. Martinez*, 561 U.S. 661 (2010) .......... 18

*City of Austin*, 943 F.3d at 999-1000 (quoting *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014) .......... 32

*Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059 (5th Cir. 1990) .......... 1

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .......... 10

*Diei v. Boyd*, 116 F.4th 637 (6th Cir. 2024) .......... 22

*Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016) .......... 12

*Elliott v. Hinds*, 786 F.2d 298 (7th Cir.1986) .......... 12

*Ex parte Young*, 209 U.S. 123 (1908) .......... 7, 11, 13, 32

*Fisher v. Campbell*, No. 5:26-CV-0073-X, 2026 U.S. Dist. LEXIS 104457 (N.D. Tex. May 12, 2026) ........ 31, 34

*Fisher v. Tex. Tech. Univ. Sys. Bd. of Regents*, No. 5:26-CV-0073-X, 2026 LX 496365 (N.D. Tex. Aug. 14, 2026) ........ 1

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ........ 16

*Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460 (5th Cir. 2020) ........ 3, 7

*Heilrayne v. Univ. of Tex.*, No. 1:25-cv-640-DAE, 2026 U.S. Dist. LEXIS 47701 (W.D. Tex. Jan. 27, 2026) ........ 13

*Hennessy v. City of Melrose*, 194 F.3d 237 (1st Cir. 1999) ........ 20

*Jackson v. Wright*, 82 F.4th 362 (5th Cir. 2023) ........ 31, 32

*McKinley v. City of Eloy*, 705 F.2d 1110 (5th Cir. 1983) ........ 29

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ........ 24

*NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015) ...... passim

*Patel v. Texas Tech Univ.*, 941 F.3d 743 (5th Cir. 2019) ........ 18

*Peng Wang v. Paxton*, 161 F.4th 357 (5th Cir. 2025) ........ 9

*Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968) ........ 16, 23, 28, 29

*Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017) ........ 19

*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ........ 11

*Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990) ........ 11

*Shamloo v. Mississippi State Board of Trustees*, 620 F.2d 516 (5th Cir. 1980) ........ 25

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........ 9

*T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71 (2d Cir. 2024) ..... 14

*T.W. v. N.Y. State Bd.*, No. Dist. LEXIS 127877, at *15-*17 (E.D.N.Y. July 19, 2022) ........ 15

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ........ 17, 23

*Van Overdam v. Texas A&M Univ.*, 43 F.4th 522 (5th Cir. 2022) ........ 13

*Watts v. Florida International University*, 495 F.3d 1289 (11th Cir. 2007) ........ 20

*Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999) ........ 19

*Williams v. Reeves*, 954 F.3d 729 (5th Cir. 2020) ........ 7

***Statutes***

Tex. Ed. Code § 109.001 ........ 27

Tex. Ed. Code § 109.002 ........ 27

Title VI of the Civil Rights Act of 1964, 42 USC 2000d ........ 1

***Other Authorities***

Ilya Shapiro, Lawless: The Miseducation of America's Elites (Broadside Books, 2025) ........ 18

***Rules***

Tech Regents Rules § 01.02.1 ........ 27

## I. Procedural Background

Plaintiff Ellen Mae Fisher informs the Court that while this Reply was pending, on Friday, August 14, 2026, the lower court dismissed her First Amendment claim in its entirety. *Fisher v. Tex. Tech. Univ. Sys. Bd. of Regents*, No. 5:26-CV-0073-X, 2026 LX 496365 (N.D. Tex. Aug. 14, 2026). However, a claim under Title VI of the Civil Rights Act of 1964, 42 USC 2000d survives and her case proceeds. *Id*. at *20. The Title VI claim is not implicated on this appeal.

In dismissing the First Amendment claim, the court below applied the same reasoning in its prior decisions on her Motion for Preliminary Injunction and Motion for Preliminary Injunction Pending Appeal which are currently before this Court. *Id*. at *7-*14. The lower court's decision on the motion to dismiss does not raise new grounds for disposing of Fisher's plea for injunctive relief due to Defendants' First Amendment retaliation, to which she is entitled. The new decision does not divest the Court of appellate jurisdiction or moot this appeal. See *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990).

## II. Argument

### A. The Fifth Circuit Has Already Held that Retraction May Be Ordered as Prospective Relief

As this Court has already held, Plaintiffs are entitled to "lift a yoke of alleged unconstitutional conduct from [their] own shoulders," including ordering state action "which would require a retraction." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 398 (5th Cir. 2015) (reversing district court's dismissal concerning entitlement to retraction as injunctive relief under *ex parte Young*).[1] Defendants claim that all relief sought by Fisher is retrospective, which is obviously not the case given Texas Tech's ongoing retaliation against her. More specifically, Defendants claim that retraction of a state actor's letters or notices to a third-party constitute impermissible injunctive relief because it is "backwards looking." ROA at 1177 (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020)).[2] But to

---

[1] *NiGen* also affirmed the dismissal of state law claims on the basis of sovereign immunity as well as the plaintiff company's claims for money damages, but this is not relevant here. See *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).

[2] Contrary to the court's ruling below, *Green Valley Special Util. Dist. v. City of Schertz,* 969 F.3d 460, 472 n.21 (5th Cir. 2020) expressly held that this Court ***was not*** prohibiting injunctions that require the state to take affirmative action as "backward looking" under Ex parte Young. There, the plaintiff Green Valley had also sought an order to ***recertify***

affirm the position taken by the lower court and argued by Defendants requires this Court to overrule *NiGen*.

In *NiGen*, the AG made an official determination that a dietary supplement maker used product labels that were "false, misleading, or deceptive" in violation of the Texas' Deceptive Trade Practices Act. *NiGen*, 804 F.3d at 392. After the AG made this decision and after the AG's letters issued, *NiGen* sued the Texas Attorney General under the First and Fourteenth Amendment (along with other constitutional claims).[3]

The AG issued letters not only directly to NiGen (akin to Defendants issuing a reprimand letter directly to Fisher), but also to third-party retailers in Texas (akin to Defendants reporting the reprimand to the Law Examiners). *Id*. at 397. The AG letters crippled

land already decertified by the state, which this Court declined to grant. But this was not because the Court held this to be "quintessentially retrospective" and therefore out of bounds. Cf. ROA at 1177 (quoting *Green Valley* at 473). Rather this Court did so because "Green Valley needs only one form of available prospective relief, and its two other requests for injunctive relief pass muster. Accordingly, ***we leave for another day*** the question whether recertification is impermissible…" (emphasis added). *Green Valley,* 969 F.3d at 472 n.21.

[3] The other constitutional claims were equal protection and violation of the Commerce Clause and the Supremacy Clause.

NiGen's business, just as Defendants here seek to cripple Fisher in her chosen profession of law, and "amounted to a preliminary injunction against the lawful sale of NiGen's products." *Id.* The AG also threatened further enforcement if NiGen did not comply, just as Texas Tech will continue to fire off letters to each bar overseer Fisher applies to in the future. *Id.*

The independent third-party retailers who received these AG letters (e.g. CVS, Walgreens, and Walmart) could clearly make their own independent decisions as to whether to place orders for NiGen's products. But the fact that these third-party retailers made their own independent decisions did not bar NiGen from seeking injunctive relief under *Ex parte Young*. *Id.* at 395.

However, one major difference from Fisher's case makes her argument even stronger. Here, Fisher moved for a preliminary injunction to maintain the last uncontested status of the parties before Texas Tech had even taken official adverse action against her. But NiGen waited fully two months to bring suit ***after*** the AG issued its letters. *Id.* at 392. The fact that the AG could act faster than a plaintiff could file or a court could issue orders did not strip away federal

jurisdiction. Furthermore, unlike District Judge Starr here, whom no one can remotely accuse of lethargy or being lackadaisical in doing the court's work—and who addressed Fisher's preliminary injunction motion within a month—NiGen had to wait ***two full years*** before the lower court responded by dismissing its case in its entirety. *Id.* at 393. But this judicially imposed time lag did not render injunctive relief unavailable under E*x parte Young*.

In *NiGen*, the State of Texas more or less mounted the same arguments against *Ex parte Young* jurisdiction raised against Fisher. Contrary to finding the AG's official letters to be past, complete, official state action and denying relief as "backwards looking," this Court found:

> … a favorable court decision would allow NiGen to again sell its products freely in Texas, whether directly, through its prior retailers, through other retailers, etc. It would allow NiGen to repair its damaged relationship with its retailers that has resulted from the Attorney General's conduct. This is not speculative and is not dependent on the actions of third parties.

*Id.* at 397 (adopting appellant's reasoning). This satisfied the company's requirement to allege "a continuing violation or the imminence of a future violation" and also satisfied the "redressability"

requirement for prospective injunctive relief. *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) and distinguishing other circuit's cases).

### B. Fisher Has Standing Due to Imminent, Traceable, and Redressable Harm Arising from Ongoing Violation of Her First Amendment Rights

Closely tied to Defendants' argument that Fisher does not seek prospective relief is their argument that she can show no injury in fact, causation (i.e. traceability), or redressability because no prospective injury exists. But it is sufficient to satisfy Article III standing to show that Defendants are determined *at all future times* to retaliate against Fisher for her past speech, and that this is substantially likely to happen unless enjoined by this Court.

To qualify for injunctive relief, Fisher does not need to show that Defendants censor her going forward. "As long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under *Ex parte Young*[, 209 U.S. 123 (1908)]." *Williams v. Reeves*, 954 F.3d 729, 738 (5th Cir. 2020). See also *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471-72 (5th Cir. 2020) (same, contra Defendants, 5th Cir. ECF No. 46 at

33).[4]

This harm is not "speculative." Texas Tech will report the illegal suppression of Fisher's speech and its "reprimand," just as it has already rushed to report to the Texas Board of Law Examiners (Law Examiners). ROA at 666-674. Furthermore, Defendants are currently retaliating against Fisher for her protected speech in the Law Examiners' character and fitness evaluation. *Id.* Texas Tech has made itself a participating witness in that ongoing process. *Id.*

Furthermore, it is not "speculative" that Fisher will apply to other state bars in the future, to which Defendants will again report its illegal "reprimand." Fisher's "career goal has always been to be a Federal Public Defender" through application to the bar of the District of Columbia. ROA at 1111. Fisher "ha[s] also planned to seek admission in the California bar." ROA at 1112. As Defendants own authorities hold, Fisher need only show that she "'inten[ds] to engage in a course of conduct arguably affected with a constitutional interest'; that [her] intended conduct is 'arguably proscribed by the [challenged state

---

[4] All page citations to this Court's docket use the 5th Cir. ECF page numbers.

action]'; and that the threat of future enforcement … is 'substantial.'" *Peng Wang v. Paxton*, 161 F.4th 357, 359 (5th Cir. 2025) (addressing pre-enforcement injunction against Texas legislation) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014)).

The injury is also "imminent" and "certainly impending." See e.g. *CCIA v. Paxton*, Nos. 24-50721, 25-50096, 2026 U.S. App. LEXIS 22118, at *17 (5th Cir. July 24, 2026). "At the preliminary injunction stage … in order to satisfy the imminent injury requirement, [a plaintiff] must make a clear showing that the directly regulated third-party … 'will likely react in predictable ways'" to the unconstitutional state action. *Id*. at *20-*21 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)).

And as for causation, Fisher must show that the third party's likely reaction "will in turn pose at least a substantial risk." *CCIA v. Paxton*, 2026 U.S. App. LEXIS 22118 at *21. Causation and traceability are not a mystery here. As a witness in the Law Examiners' ongoing process, Defendants expressly seek to block "Ms. Ellen Fisher's admission to the Bar" in retaliation for what they construe as "celebratory conduct," a euphemism for her impermissible

viewpoints about the assassination of Charlie Kirk. ROA at 668.

There is no speculation that the Law Examiners will act on Texas Tech's illegal reprimand. This is because the Law Examiners have already informed Fisher that they are doing so and will do so. The Law examiners informed Fisher on June 29, 2026 that, at minimum, they are delaying her fitness and character evaluation:

> Generally, we allow up to 150 days to complete our investigation of an Applicant's present good moral character and fitness. However, in your case, we have extended this time period by 90 days because we will request an update on your pending civil litigation after the July 2026 Texas Bar Exam.

5th Cir. Docket ECF No 47-2 at 6 (Declaration of Michael Thad Allen, Exhibit 1). Likewise, it is not speculative that the injury so imposed "will be redressed by a favorable decision" in this Court. *Reule v. Jackson*, 114 F.4th 360, 368-69 (5th Cir. 2024). Again, the Law Examiners say so. The Law Examiners are obviously awaiting the federal court system.

Thus, Defendants' retaliation against Fisher in her Texas bar admission is a continuing violation of federal law. The obvious and tangible risk is that the Law Examiners will implement exactly what Texas Tech asks for—i.e., to punish Fisher's speech by prohibiting her

from practicing law in Texas. And, so far, Defendants' plan is working by delaying the ongoing process of Fisher's bar application.

### C. Expungement of Disciplinary Records Is Also Well-Established in the Federal Courts

This Court has granted the expungement of a reprimand as proper injunctive relief under *Ex parte Young* in *Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990), which Defendants now ask the Court to overrule. (Fisher refers the Court to her Appellant's Brief on this issue.)

Although Fisher had not graduated when she first sought injunctive relief in the district court, or when the district court first ruled (disregarding the suppression of speech on campus that was ongoing ***at that time***); Defendants are correct that Fisher has now graduated. She is no longer a Texas Tech student. But for Texas Tech's ongoing reporting of its illegal discipline, Fisher's relationship to the school has ended.

Defendants claim this renders Fisher ineligible for relief, and all harm now recedes into the past. 5th Cir. ECF No. 46 at 64. But many cases have ordered injunctive relief despite the plaintiff having ended their relationship with the institution that imposed past, unconstitutional discipline. See e.g. *Doe v. Cummins*, 662 F. App'x 437,

441-442, 444 (6th Cir. 2016) (holding one suspended University of Cincinnati student who meanwhile transferred to another educational institution could request injunctive relief "prohibiting the imposition of, or reporting of, any disciplinary action under the [University's] Code of Student Conduct"); *Elliott v. Hinds*, 786 F.2d 298, 303 (7th Cir.1986) (finding terminated state employee's request that personnel file be cleared of derogatory material is "clearly prospective"); *Heilrayne v. Univ. of Tex.*, No. 1:25-cv-640-DAE, 2026 U.S. Dist. LEXIS 47701, at *5-*6 (W.D. Tex. Jan. 27, 2026) (holding, "Plaintiffs … have graduated and [one] Plaintiff['s] … probation period has ended, [plaintiffs'] requests to amend their disciplinary records constitutes prospective relief appropriate under *Ex parte Young*") (citing *Van Overdam v. Texas A&M Univ.*, 43 F.4th 522 (5th Cir. 2022).

Defendants invoke one out-of-jurisdiction case as supposedly more sound than this Court's reasoning and better than the reasoning of the majority of other circuit court's precedents. See *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71 (2d Cir. 2024) (affirming dismissal of case). But *T.W.* is not even a constitutional case. Rather, it arose under the Americans with Disabilities Act (ADA). Far from being apposite to

Fisher's First Amendment case, the Second Circuit had to first sort out to what extent Title II of the ADA "sweeps more broadly than the Fourteenth Amendment." *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th at 82.[5]

Importantly, *T.W.* did not involve a university or college but the New York State Board of Law Examiners, which the plaintiff T.W. alleged had denied her reasonable disability accommodation. As facts discussed more extensively by the underlying district court show, T.W. averred that this caused her to fail the bar exam twice. *T.W. v. N.Y. State Bd.*, No. 16-cv-3029 (RJD) (MMH), 2022 U.S. Dist. LEXIS 127877, at *15-*17 (E.D.N.Y. July 19, 2022). T.W. prayed for injunctive relief to expunge these past exam failures, which, she argued, deprived her of "the right to practice law" via a "right to access the courts" through some sort of entitlement to become a lawyer (a right the court found non-existent). *Id.*

But only an affirmative pass on the bar exam could change T.W.'s future prospects to practice law, not an expunged record of failures.

[5] Here the Court found "Title II of the ADA does not validly abrogate sovereign immunity in the context of professional licensing." *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024)

*T.W. v. N.Y. State Bd.*, No. 16-cv-3029 (RJD) (MMH), 2022 U.S. Dist. LEXIS 127877 at *21-*22. Deleting failed exams would do nothing. *Id.* T.W. was only asking the court to "rewrite history," which Fisher does not do here. *Id.* at *21.

Fisher's claim is straightforward: Defendants' continued, unconstitutional retaliation threatens to deprive her of her livelihood going forward. Defendants expressly state their intention to block her entry to the practice of law due to her speech. Defendants protest that the "necessary nexus between injunctive relief" and the "continuing violations" that Texas Tech imposes on Fisher is somehow inscrutable. It is actually obvious, just as it was in *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 398 (5th Cir. 2015).

Ordering Texas Tech to expunge and retract its illegal reprimand falls within the authority and jurisdiction of the federal courts, and the court below erred in holding otherwise.

### D. Pickering Does Not Apply

Defendants ask this Court to apply the wrong standard by treating Plaintiff as a public employee rather than as a student. But if Fisher were a public employee, the controlling case would be *Garcetti v.*

*Ceballos*, 547 U.S. 410 (2006) (restricting public-sector employee speech). By applying the pre-*Garcetti* standard under *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968), Defendants concede, without explaining, that this is an education speech case. This is because the Fifth Circuit instructs that *Pickering* must apply to academic speech, not the more restrictive *Garcetti* standard. See *Buchanan v. Alexander*, 919 F.3d 847, 852–53 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 432 (2019).

After making this argument, Defendants reverse field. They churn through a brace of due-process cases and claim that Texas Tech is owed "deference" because Fisher's case is actually an academic discipline case. See 5th Cir. ECF No. 46 at 43-45. That is, Fisher's case is not an employment case after all. The more sound and consistent interpretive framework is that Fisher's case is a student speech case to be analyzed under the framework set forth in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969).

Moreover, Defendants admit, as they must, that they are entitled to "no deference" on whether their actions "exceeded constitutional constraints." 5th Cir. ECF No. 46 at 43 n. 9 (quoting *Christian Legal Soc'y Chapter of the Univ. of California v. Martinez*, 561 U.S. 661, 686

(2010)). In the First Amendment context, under the *Tinker* framework, this Court does not owe deference to unconstitutional disciplinary decisions, such as Defendants impose on Fisher here. See e.g. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 283 (5th Cir. 2003) (imposing "substantially heavier" burden on school to justify reasonableness of rules and policies).

In addition, Defendants' due process cases concerning academic discipline turn less on "deference" than they turn on the fact that each plaintiff in those cases received constitutional due process. No constitutional rights were violated. See *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (ruling less on "deference" than on fact that "record is devoid of evidence even suggesting that any Defendants acted unreasonably in reporting, investigating, or resolving the allegations against Patel"); *Plummer v. Univ. of Houston*, 860 F.3d 767, 774 (5th Cir. 2017) (same, where student received all the process that was due and "further procedural safeguards would not have lessened the risk of an erroneous deprivation … or otherwise altered the outcome"); *Wheeler v. Miller*, 168 F.3d 241, 247-48, 252 (5th Cir. 1999) (per curiam) (same, where student was not entitled to relief on

constitutional due process claim because school provided constitutional minimum).

These cases stand in contrast to the facts here. Defendants' zeal to retaliate against Fisher led to the almost comically biased Keffer Report as well as some sort of secret Dean's Star Chamber convened by Defendant Nowlin outside of any cognizable Texas Tech policies, rules, or procedures. ROA at 601-604 (Keffer Report), 666-667 (Dean Nowlin referring to some unknown "Dean's Office process").

Even if Defendants could recast Fisher as a mere employee, their out-of-jurisdiction student-employment cases address students who worked in external businesses or non-profits beyond the university. That is not the case here. Compare *Watts v. Florida International University*, 495 F.3d 1289 (11th Cir. 2007) (Master of Social Work student placed in external mental health facility for practicum); *Andersen v. McCotter*, 100 F.3d 723 (10th Cir. 1996) (student intern volunteer with Department of Corrections); *Hennessy v. City of Melrose*, 194 F.3d 237 (1st Cir. 1999) (plaintiff student-teacher placed in externship at public school who openly rebuked school principal on location). Here Fisher met with professors and fellow students for

private conversations in their offices or in the common law clinic suite designated for free and open discussion. No client was present. There was no external "employer."

Fisher did not, for example, speak during fieldwork, in a court clerkship, or in a private law firm. She paid tuition, she enrolled in the criminal clinics as part of her legal education, and she earned graded credit (A's, to be exact). Fisher sought mentorship from her professors, only to have Dean Nowlin and Professor Morgeson pose as thought police and invade ***their*** academic freedom as well as Fisher's. Fisher was never paid. *Cf. Andersen*, 100 F.3d at 726 (enumerating indicia of employment relationship not evident here).

Whether Defendants characterize Fisher as an employee or as the object of university discipline, their authority falls wide of the mark. Above all Texas Tech's discipline was a pretext to censor Fisher's speech. This is clear because Texas Tech faculty, students, and outside speakers alike mock the dead and curse in the clinics. ROA at 890-892. Fisher was punished only because she was heard to do so (or misrepresented by Morgeson to do so) about Charlie Kirk. She did nothing different from what practicing attorneys do throughout the

Texas bar, however indecorous that may be. ROA at 288. This was fine with Defendants so long as their favored political viewpoints were not offended. Thus, even if "an interest in teaching professionalism may sometimes legitimately curtail a student's speech, the interest evaporates entirely if the College's professionalism regulations bear little resemblance to those of the profession." *Diei v. Boyd*, 116 F.4th 637, 646-47 (6th Cir. 2024). *Cf. Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) (medical school could deny degree due—not to speech— but to unprofessionalism where actual "conduct" was not a euphemism for disfavored "speech," e.g., tardiness, sexual harassment, bad grades, and drunk driving).

This is not a case, as chronicled by conservative Manhattan Institute scholar Ilya Shapiro and others, where feral law students at top ten law schools run amok on campus and impose the "heckler's veto."[6] By expressing her viewpoints, Fisher muzzled no one. Rather, it is Defendants who use the power of the state of Texas to muzzle only Fisher. So doing, they chilled speech throughout the law school (which

[6]See e.g. Ilya Shapiro, Lawless: The Miseducation of America's Elites (Broadside Books, 2025), 80-90 (discussing "heckler's veto" imposed on speakers at Yale University Law School).

was ongoing at the time Fisher filed suit when the judge below denied her motion).

Therefore, as set forth in Fisher's main brief, Plaintiff's speech must be evaluated under First Amendment principles governing student expression under *Tinker*, not *Pickering*. And under that standard, she is overwhelmingly likely to prevail as set forth in Fisher's Appellant brief.

### E. Fisher Prevails Even if *Pickering* Applies, which It Does Not

Defendants do not contest that Plaintiff's speech (or what they call "conduct") involved a matter of public concern or that she suffered an adverse action.

Thus, if *Pickering* applies instead of *Tinker*, which it does not, the only issues are whether Fisher's interests outweigh Defendants' and whether her speech was a "substantial" or "motivating" factor in the adverse employment action Defendants imposed. *Pickering*, 391 U.S. at 568; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

The problem for Defendants is that more than speculative harm is still required to substantiate the state's interest. Even to discipline

students placed in externships: "the government cannot rely on purely speculative allegations that certain statements caused or will cause disruption to justify the regulation of employee speech." *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996) (internal quotations omitted). Discipline may not rest on disagreement with the speech, generalized concerns, or speculative predictions of disruption or harm, which holds ***even if*** this were a *Pickering* case. See e.g. *Bevill v. Wheeler*, 103 F.4th 363, 375-76 (5th Cir. 2024) ("real, not imagined, disruption is required") (internal quotations omitted).

A crackdown on student expression requires an even stronger showing. See *Shamloo v. Mississippi State Board of Trustees*, 620 F.2d 516, 521 (5th Cir. 1980) (student speech may be restricted only where it "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school" or collides with the rights of others).

This test is satisfied when an actual disruption occurs, or the record contains facts "which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Bell v. Itawamba Cty. Sch. Bd.*, 799 F.3d 379,

397 (5th Cir. 2015). This "requires a specific and significant fear of disruption, not just some remote apprehension of disturbance." *Id.* Fisher's speech does not rise to this level. Morgeson, ever ready with fresh misrepresentations, now claims to have been reluctant to call clients. ROA.614, 679. She does not identify whom she had to forgo calling, obviously because there was no one. Fisher spoke for little more than 30 seconds in Prof. Stephens' office, which Morgeson then misrepresented as some sort of monitory dressing down, and then Fisher spoke with fellow students and Professor Metze for 10 minutes in his office. ROA at 152, 156, 171, 259-260, 278. This could hardly interfere with Morgeson's imaginary client calls.

The limited number of individuals in the clinic offices were all discussing the same thing, including Morgeson's students who were also loud enough to be heard by Professor Stephens across the hall. ROA at 160-161, 174. The difference was that these students expressed what Texas Tech considers to be the proper viewpoints: namely, "shock that [Kirk] had been shot." ROA at 174.

Beyond Defendant Morgeson's asseveration, no evidence suggests Fisher disrupted clinic operations or interfered with client service. The

weight of the evidence indicates that conservative students were not even bothered by her in particular. See e.g. M. Wright "wasn't upset about" Fisher's speech (ROA at 187); cf. 5th Cir. ECF 46 at 51; A. Bomar stating, "I don't think it was celebratory at all" and "I don't think she was saying it loud," in reference to Fisher's speech (ROA at 207); J. Gomez testifying to uncomfortable general atmosphere, rather than Fisher's speech specifically (ROA at 219); A. Monacelli testifying that she "was processing what I heard from Professor Morgeson about what was being said and what I saw and the conversations we were having … sort of what was happening in the space together," i.e., not Fisher specifically (ROA at 199).

Fisher will not reprise her main brief here. But the chilling effect of repressing student speech has disrupted the Texas Tech clinics far more than Ellie Fisher. See e.g., Monacelli attesting to disruption (ROA at 199). Even Dean Sofia Chapman who purports "100%" certainty that several students were "upset and bothered" by Fisher's speech, acknowledges, as she must, that the students who left early did so because of the "totality of events," not Fisher's comments alone. ROA at 680. Fisher alone cannot be responsible for a "totality of events" on a

day in which everyone was talking about the same thing. There is a word for this kind of arbitrary suppression of one individual's speech. It is scapegoating.

Defendants cannot clear the *Pickering* hurdle because this Court must consider how Fisher's speech, if it were employee speech, would likely generate controversy or disruption, impede the employer's performance and operations, or adversely affect the working relationships necessary to the school's proper functioning. See e.g. *Brawner v. Richardson*, 855 F.2d 187, 192 (5th Cir. 1988) (citing *Pickering v. Bd. of Educ.*, 391 U.S. at 569–573). Here, affirmative evidence shows that clinic functions continued uninterrupted. The greatest disruptor was actually Morgeson, who anointed herself some sort of hall monitor, eavesdropped on students and faculty alike, feigned fragility, sent her students home (ROA at 199), and then proceeded to misrepresent facts to the Honor Council and to the court. Again, no evidence suggests any client was compromised.

Where there is no actual or foreseeable disruption to operations, the government's efficiency interest is minimal and cannot outweigh a public employee's interest in protected speech. *Pickering*, 391 U.S. at

568–73. Thus, the *Pickering* balance weighs in Fisher's favor. See e.g. *Branton v. City of Dall.*, 272 F.3d 730, 741 (5th Cir. 2001) (reversing summary judgment for state and holding, "Real, not imagined, disruption is required, and the 'close working relationship' exception cannot serve as a pretext for stifling legitimate speech. . . .") (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1115 (5th Cir. 1983)).

### F. Defendant's Argument that Speech Was Not a Substantial or Motivating Factor Is Not Serious

Defendants claim that they have punished "conduct" not "speech." This somehow also includes Fisher's failure to submit to Dean Nowlin's imposition of compelled speech in the form of "refuse[al] to take responsibility for [her] professional failures and express remorse." ROA at 663. But "failure to express remorse" is not "conduct"; it is the refusal to submit to compelled speech.

Nowlin's report to the Law Examiners seethes with resentment over Fisher's noxious viewpoints, including her refusal to conform to his own. ROA at 668. The Keffer Report focuses on her alleged statements, even talking to her mother. ROA at 639-640. Despite employing euphemisms like "actions and conduct," the Honor Council finds Fisher made improper "statements." ROA at 646, 871. Even Fisher's alleged

"celebration" is expression, cognizable through speech. ROA at 671.

Furthermore, Defendants' protest that Fisher's so-called "conduct" was "disruptive," but the evidence shows this is pretextual. Among other things, this has been shown by the fact that Texas Tech awarded Fisher four "A's" in the very clinical courses she supposedly "disrupted" by allegedly offending the ears of Professor Morgeson and conservative students. ROA at 1108. Or as the Honor Council puts it:

> Ellie Fisher was aware that students in the clinical program had different political viewpoints and that statements and actions taken following the death of Charlie Kirk within a professional setting could create conflict among co-workers that would interfere with performance of work.

ROA at 691. Of course, Defendants identify no other "actions" or "conduct" other than this—Fisher's speech.

The discipline imposed on Fisher targeted her protected speech. "[E]xplain[ing] ad nauseum" that Fisher's speech is "conduct," as Defendants purport to do, does not work some transmorgrification through word magic. ROA at 1219.

### G. The Regents Are Proper Defendants

The court below correctly ruled that "the Fifth Circuit has already held that individual members of a board of regents are proper

defendants within the context of academic discipline." *Fisher v. Campbell*, No. 5:26-CV-0073-X, 2026 U.S. Dist. LEXIS 104457, at *9 n. 31 (N.D. Tex. May 12, 2026) (citing *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023)). Thus, Defendants ask this Court to overrule itself yet again.

The almost identical statutory authority vested in the University of North Texas Regents in *Jackson* indicates that the Regents "have direct governing authority over the UNT officials that are allegedly continuing to violate … First Amendment rights, including authority to countermand the decisions of the subordinate UNT officials." *Jackson*, 82 F.4th at 368. The same is therefore true for Texas Tech's Regents. All that is required is that the Regents have "some connection" with the enforcement of the challenged law or policy. *Jackson v. Wright*, 82 F.4th at 367 (quoting *Ex parte Young*, 209 U.S. at 157). This requirement is met by "some scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

As this Court has already determined:

> … the Board defendants have the required 'scintilla of enforcement' due to their governing authority over [the

> university]. The Board defendants nowhere deny that their governing authority satisfies the 'scintilla of enforcement' standard; in fact, they never even acknowledge that standard in their opening brief.

*Jackson v. Wright*, 82 F.4th at 367. Similarly here, Defendants all but ignore the Regents Defendants' plenary authority over Texas Tech University. The Texas Tech Regents have more than a "general duty to see that the laws of the state are implemented." Cf. *City of Austin*, 943 F.3d at 999-1000 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

Indeed, both the Texas Tech Regents Rules and the Texas Education Code grant the Regents plenary authority over Texas Tech and its employees. "The governance, control, jurisdiction, organization, and management of the Texas Tech University System is hereby vested in the present board of regents of Texas Tech University . . ." Tex. Ed. Code § 109.001(c). See also Tex. Ed. Code § 109.002 ("The government, control, and direction of the policies of the university system and the component institutions are vested in a board of nine regents"); Texas Tech Regents Rules § 01.02.1(a-b) (incorporating plenary authority vested by Tex. Ed. Code § 109.001-109.002 into the "governance" section of the Texas Tech University bylaws).

It cannot be disputed that the Regents therefore have plenary authority to expunge Fisher's educational record, to retract the unconstitutional reprimand issued by their agents, and to answer as proper official-capacity defendants.

### H. Jack Nowlin and Jarod Gonzalez Are Proper Defendants

The District Court has already properly held that Defendant Nowlin and Defendant Gonzalez are official-capacity defendants with a "scintilla of enforcement authority." See *Fisher v. Campbell*, No. 5:26-CV-0073-X, 2026 LX 261214, at *8-*9 (N.D. Tex. May 12, 2026). Either one could carry through with the relief Fisher requests here. In fact, Defendants do not even contest that Defendant Dean Nowlin is a proper official-capacity Defendant. 5th Cir. ECF No. 46 at 30-31. There is no reason to disturb this ruling of the lower court.

## III. Conclusion

For the foregoing reasons, the Court should grant Plaintiff Ellen Mae Fisher the relief requested in her Appellant's Brief.

Respectfully submitted,

DATE: August 17, 2026

/s/Michael Thad Allen
Michael Thad Allen (435762)
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738
mallen@allenharrislaw.com

## CERTIFICATE OF COMPLIANCE IN COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **5,556 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), namely excluding the caption, Certificate of Interested Persons, Statement Regarding Oral Argument, the Table of Contents, and Table of Authorities.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in the Office 365 Suite in **14 point, Century Schoolbook font**.

*/s/Michael Thad Allen*

Dated: August 17, 2026

Michael Thad Allen, Esq.
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify in compliance with Fed. R. App. Pro. 25(d), that I served the foregoing motion on August 17, 2026 through the Court's electronic filing system and by sending it by electronic mail to the following recipients, attorneys of record:

Daniel Ortner
Assistant Solicitor General
Office of the Texas Attorney General
Office: (512) 936-1896
Cell: (385)-242-9582
Daniel.ortner@oag.texas.gov

Wade Johnson
Deputy Chief
Special Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Office: 512-463-4139
Wade.Johnson@oag.texas.gov

/S/Michael Thad Allen

Michael Thad Allen, Esq.